**In re Charlene A. FRANCISCO, Debtor.**

**Charlene A. Francisco, Appellant.**

**BAP No. NM–08–019.**
**Bankruptcy No. 07–12810–s13.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Filed July 2, 2008.

Her appeal presents an issue of first impression to this Court under the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") of 2005, which is whether 11 U.S.C. § 109(h)(1) [2] is satisfied when an individual debtor obtains the required credit counseling on the same day, but prior to, the filing of the petition for bankruptcy relief. The bankruptcy court held that § 109(h)(1) requires that credit counseling be completed, at the latest, on the calendar day prior to the day on which the petition is filed, and dismissed debtor's case. For reasons stated more fully hereafter, we REVERSE.

## I. BACKGROUND

The facts leading to this appeal were undisputed and straightforward. The Debtor obtained a "credit briefing" from an approved credit counseling agency on November 7, 2007, at 8:50 a.m. Later that same day, she filed a Chapter 13 petition for bankruptcy relief, including the "Certificate of Counseling" issued to her by the credit agency. On November 14, 2007, the bankruptcy court, *sua sponte*, issued an Order directing the Debtor to show cause why her case should not be dismissed pursuant to § 109(h)(1). A hearing was held on January 15, 2008, and the bankruptcy court issued a memorandum decision and Order dismissing the Debtor's case on January 25, 2008. The Debtor filed a notice of appeal on February 4, 2008 and, on February 8, 2008, the bankruptcy court granted her request for a stay pending appeal.

Submitted on the briefs: * Gerald R. Velarde, Albuquerque, New Mexico, for Appellant.

Before BOHANON, CORNISH, and THURMAN, Bankruptcy Judges.

THURMAN, Bankruptcy Judge.

Charlene Francisco ("Debtor") appeals the dismissal of her Chapter 13 petition.[1]

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. In the bankruptcy court, the Chapter 13 trustee agreed with the Debtor's position that her case should not be dismissed. Therefore, this appeal is unopposed.

2. Unless noted, all further statutory references herein are to Title 11 of the United States Code, as amended by BAPCPA (the "Bankruptcy Code").

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from final judgments and orders of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[3] Because the notice of appeal was timely filed within ten days of a final order, and because no party to this appeal has elected to have the appeal heard by the district court, this Court has appellate jurisdiction.

## III. ISSUE AND STANDARD OF REVIEW

■ The single issue presented by this appeal is whether Debtor's credit briefing satisfies the requirements of § 109(h)(1), and thereby renders her eligible to be a debtor. This is an issue of statutory interpretation, which this Court reviews *de novo*, giving no special deference to the trial court's opinion.[4]

## IV. DISCUSSION

Section 109(h)(1), which was added to the Bankruptcy Code by the BAPCPA amendments of 2005, provides as follows:

(h)(1) Subject to paragraphs (2) and (3), and notwithstanding any other provision of this section, an individual may not be a debt or under this title unless such individual has, *during the 180–day period preceding the date of filing of the*

petition *by such individual,* received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis. (Emphasis added.)

By this provision, Congress created an additional eligibility requirement for individual debtors seeking bankruptcy protection, which is the receipt of credit counseling within a specified time period.

We are not concerned in this appeal with the outer 180–day boundary to that period. Rather, we concern ourselves solely with the definition of the statute's inner, or cut-off, boundary. The effort to define that boundary has resulted in two distinct lines of case law. The first line of cases ("Plain Language") holds that the phrase "the 180–day period preceding the date of filing" requires that the specified action (credit briefing) be obtained no later than the calendar day prior to the day on which the petition is filed.[5] The second line of cases ("Bright Line") holds that § 109(h)(1) is satisfied so long as the credit briefing precedes the filing of the petition, even if both events occur on the same calendar day.[6]

The Plain Language cases[7] define the term "date" by its most commonly used

---

**3.** 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002.

**4.** *Office of Thrift Supervision v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.),* 236 F.3d 1246, 1251 (10th Cir.2001).

**5.** *See, e.g., In re Gossett,* 369 B.R. 361 (Bankr. N.D.Ill.2007); *In re Cole,* 347 B.R. 70 (Bankr. E.D.Tenn.2006), and the bankruptcy court's decision in this case, *In re Francisco,* 386 B.R. 854 (Bankr.D.N.M.2008).

**6.** *See, e.g., In re Barbaran,* 365 B.R. 333 (Bankr.D.D.C.2007); *In re Swanson,* 2006 WL 3782906 (Bankr.D.Idaho Dec. 21, 2006); *In re Moore,* 359 B.R. 665 (Bankr.E.D.Tenn. 2006); *In re Hudson,* 352 B.R. 391 (Bankr. D.Md.2006); *In re Toccaline,* 2006 WL 2081517 (Bankr.D.Conn.2006); *In re Spears,* 355 B.R. 116 (Bankr.E.D.Wis.2006); *In re Warren,* 339 B.R. 475 (Bankr.E.D.Ark.2006).

**7.** The designations used here to refer to the two lines of cases are not meant to reflect any opinion regarding the relative merits of the reasoning. On the contrary, these or similar

meaning, i.e., a time period consisting of a day, a month, and a year. Thus, "the 180-day period preceding the date of filing" ends on the calendar day before the calendar day on which the petition is filed, and credit briefing cannot be obtained on the same calendar day that the petition is filed. Unfortunately, neither side of this issue has the benefit of any truly helpful statutory history, though occasionally both sides have claimed the benefit of the minimal background that does exist. In any event, Plain Language cases have asserted that the Bright Line Interpretation simply ignores the term "date" in the statute, which violates the long-standing rule of statutory interpretation that every word in a statute should be given meaning. Moreover, if all Congress had meant was "preceding the filing," it certainly knew how to state it that way.[8]

Plain Language cases have also relied on Federal Rule of Bankruptcy Procedure 9006(a) as support for their interpretation. That rule provides, "[i]n computing any period of time prescribed . . . by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included."[9] Explaining its reliance on Rule 9006(a), the court in *In re Gossett* stated that "[a]s Congress has not more specifically legislated the [§ 109(h)(1) time period], by default the Court looks to the Rule for the applicable answer."[10] *Gossett* con-

cluded that "a debtor who obtains the required pre-petition counseling briefing on the same day as the date upon which a petition is filed does not comply with § 109(h)(1)."[11]

On the other side of the issue, the Bright Line cases focus on the ending of the allowed briefing period, holding that it ends at the precise point in time at which the petition is filed. These cases reason that the filing of the petition is treated throughout the Bankruptcy Code as a "bright line" that defines the estate and alters the rights and responsibilities of the debtor and its creditors. In its interpretation of § 109(h)(1), the *Hudson* court considered how the term "date" is used elsewhere in the Bankruptcy Code, including the interplay between § 547(b)(4)(A) (avoidance of preferential transfers) and § 549(a)(1) (avoidance of post-petition transfers), and in § 348(f)(1)(A) (defining property of the estate on conversion of a Chapter 13 case to another chapter).[12] Section 547(b)(4)(A) authorizes the trustee to recover otherwise qualified transfers that are made within 90 days "before the date of the filing of the petition," whereas § 549(a)(1) allows avoidance of transfers made "after the commencement of the case." Thus, "the date of the filing" in § 547(b)(4)(A) is interpreted as the *moment* of filing, since there would otherwise be an uncovered gap between midnight

---

designations have been used by other courts and convenience dictates that some simple distinction be made. This Court would most likely be remiss were it to interpret a statute other than by its plain language, and would also like to be associated with bright lines of thinking as long as they do not obfuscate plain language. In sum, both lines of cases are well reasoned and supportable, regardless of the appellations we have given them here.

8. *See, e.g., In re Francisco,* 386 B.R. at 861 ("Congress knew how to write such clear language").

9. Rule 9006(a) has been determined to be inapplicable to § 109(h)(1) by at least one Bright Line case. *See In re Moore,* 359 B.R. at 675.

10. 369 B.R. at 369.

11. *Id.* at 371.

12. 352 B.R. at 393–94.

and whenever the petition was filed, during which transfers could be made whether or not they were otherwise preferential, an "absurd result[s], contrary to the congressional purpose of the provisions."[13]

Analysis of other code sections also supports this reasoning. Thus, § 348(f)(1)(A) provides that the estate of a case converted to another chapter consists of whatever became estate property "as of the date of filing of the petition" that remains in the debtor's possession or control "on the date of conversion." Interpretation of the term "date" in this section as other than a moment in time would create a similar "gap" that would undermine the need for "exact certainty" with respect to the parties' rights.[14] Therefore, the *Hudson* court concluded that, "[i]n the context of the Bankruptcy Code, the term 'date' appears to identify a moment in time, rather than a span of time."[15]

The court in *Moore*[16] reached the same conclusion relying on provisions that were added to the Code by BAPCPA.[17] One such provision is the "hanging paragraph" in § 1325(a), which applies to debts incurred within 910 days "preceding the date of the filing of the petition." Thus, "[i]f date of filing is defined in this provision as the entire 24–hour period during which the bankruptcy filing takes place, a motor vehicle purchased on the morning of an afternoon bankruptcy filing would fall outside the protections otherwise provided a 910 creditor."[18] The *Moore* court conclud-

ed not only that "the term 'date of filing' is often used in the Bankruptcy Code to mean the moment of filing," but "that Congress sometimes used the phrases 'preceding the date of filing' and 'after the date of filing' to simply mean before the bankruptcy filing and after the bankruptcy filing."[19] Moreover, this definition "is consistent with the overall critical importance in the bankruptcy context of the precise time at which an individual or entity becomes a debtor."[20]

Also interpreting § 109(h) to allow debtors to obtain credit briefing up to "the specific day, month, year, and time of day the petition was filed," the court in *Warren* reasoned that "[i]n bankruptcy, the exact time of filing is a critical bright line in determining property rights of debtors and creditors. At the moment a petition for relief is filed, the automatic stay goes into effect, affording the debtor an extra measure of protection from the legal maneuvers of his creditors."[21] The *Warren* court also rejected the notion, sometimes given as a basis for the Plain Language view, that Congress intended that debtors have a waiting period after completion of their credit counseling and before filing, stating that "nothing in the legislative history suggests that Congress contemplated" such a waiting period.[22]

Other courts have also noted that § 109(h)'s legislative history does not reveal an intent to require a waiting period,

---

**13.** *In re Barbaran,* 365 B.R. at 335.

**14.** *In re Hudson,* 352 B.R. at 393.

**15.** *Id.* at 394.

**16.** 359 B.R. 665

**17.** "[T]hus strengthening the propriety of relying on them in interpreting § 109(h)." *In re Barbaran,* 365 B.R. at 335.

**18.** *In re Moore,* 359 B.R. at 672. The *Moore* court noted similar "gap" issues that could

arise under BAPCPA provisions §§ 522(p), 1307(c)(11), 1308(b)(1), and 1325(a)(8).

**19.** *Id.*

**20.** *Id.*

**21.** *In re Warren,* 339 B.R. at 480.

**22.** *Id.*

adding that Congress certainly knew that, in this era of electronic filing, no such waiting period could be guaranteed by requiring debtors to obtain counseling by the calendar date before they file their petition.[23] Since credit counseling is available on the internet at any time of day, and bankruptcy cases may be electronically filed 24 hours a day, a debtor could complete credit counseling at 11:59 p.m. of Day One and file his or her petition at 12:01 a.m. on Day Two, thereby effectively eliminating any waiting period even under a Plain Language interpretation. As such, "if Congress had intended that a waiting period occur, it would have more explicitly set forth its intention in the statute itself or in its legislative history."[24]

 Although both lines of cases are inherently sound, this Court is more persuaded by the reasoning of the Bright Line cases. To begin with, we agree that the language of § 109(h) is ambiguous, based both on other uses of the term "date" in the Bankruptcy Code and on the fact that the term has been interpreted in two vastly different ways by the courts that have considered the issue. Significantly, we agree with the *Hudson* court's analysis of the proper focus that should be given to the term:

> *Mills*[25] and *Cole* rest upon an interpretation of the phrase "during the 180–day period preceding the date of filing the petition" which focuses on whether the date of filing should be included in the

180–day period. This court, however, respectfully concludes that the proper focus is on the meaning of the term "date" in relation to the filing of the petition, because Section 109(h)(1) sets a deadline for credit counseling that must be accomplished for a debtor to be eligible to file a petition. It is not measuring the period of time that is at issue here; rather, it is the deadline by which credit counseling must be accomplished.[26]

In other words, the focus of our inquiry is not whether Debtor's credit counseling was obtained within the 180–day period, but rather, whether it was obtained by the statutorily imposed deadline. Given that nothing in the legislative history supports an interpretation of that deadline as including a waiting period prior to filing of the petition, as well as the difficulty of enforcing such a waiting period under the current statutory language, we conclude that a debtor qualifies as a debtor under § 109(h) so long as he or she completes the required credit counseling at any time between 180 days before, and the moment of, filing the petition.[27] Therefore, since Debtor obtained her credit briefing prior to the filing of her petition, albeit on the same calendar day, she is qualified to be a debtor under § 109(h).

## V. CONCLUSION

Accordingly, the bankruptcy court's decision dismissing Debtor's bankruptcy case

---

**23.** *See, e.g., In re Hudson,* 352 B.R. at 396; *In re Moore,* 359 B.R. at 673–74.

**24.** *In re Moore,* 359 B.R. at 674.

**25.** *In re Mills,* 341 B.R. 106 (Bankr.D.D.C. 2006), *abrogated by In re Barbaran,* 365 B.R. 333 (Bankr.D.D.C.2007), authored by Judge Teel, followed the Strict Interpretation view. However, Judge Teel subsequently recanted his *Mills* decision and adopted the Bright Line view in *Barbaran.*

**26.** *In re Hudson,* 352 B.R. at 395.

**27.** We also note that this focus eliminates any need to determine whether or not Rule 9006(a), which is used only to measure backwards, is applicable. *See In re Moore,* 359 B.R. at 675 (finding R. 9006(a) inapplicable to § 109(h)(1)).

**706**

is REVERSED and this case is remanded for further proceedings consistent with this decision.

CORNISH, specially concurring:

I wholeheartedly concur in my colleagues' learned and eloquent majority opinion, but feel compelled to address several additional concerns I have with this appeal. As I have stated on numerous occasions, both privately and publicly, the BAPCPA has, whether Congress intended it to or not, limited access to the bankruptcy courts of those persons who are most in need of debt relief. For example, in this case, Debtor's car was repossessed approximately one week before she filed for Chapter 13 relief, according to her Petition.

Additionally, for the bankruptcy court to emphasize that Congress may have intended a waiting period between obtaining credit counseling and filing a petition in order to contemplate the information received is naive. Since passage of the BAPCPA, I have heard of only a few isolated instances in which a debtor has been persuaded by the required counseling either to defer filing or not to file a bankruptcy petition.

Heaven knows, we bankruptcy judges have plenty of work to do in refereeing conflicts between parties who are in actual disputes in our adversary system. However, the present case creates an artificial rift between parties who don't have even the slightest fight to wage. In this case, Debtor's counsel and the trustee are sitting on the sidelines as merely disinterested spectators while the trier of fact is doing all of the heavy lifting. One of the bankruptcy court's reasons for raising the credit counseling timing issue on its own motion is its "concern that a debtor immediately or years later might find a creditor collecting a debt on the basis that Debtor was never discharged in this case." I find the stated rationale invalid. During my tenure on the bankruptcy bench, I have rarely heard of a creditor ignoring a bankruptcy court's discharge order and attempting to collect a debt or reopen a case based on its substituted judgment that such discharge was procedurally defective. Although we judges are sometimes tempted to snag a case and write about some interesting and challenging legal question raised by the BAPCPA, I think it best that we exercise restraint and wait for an aggrieved party to come before us in an actual adversarial dispute.

In reviewing the contents of Debtor's Petition, she appears to be a typical debtor who is a candidate for a discharge. Had the order dismissing this case not been stayed, it would have triggered another set of barriers to Debtor's refiling and obtaining automatic stay protection. To re-file, Debtor would have been required to pay duplicate court costs and attorney fees, which in most cases is an extreme economic barrier to those who can afford it the least.