In re Jill Legae STEPHENS, Debtor.

Jill Legae Stephens, Appellant,

v.

L. Win Holbrook, Trustee, Appellee.

BAP No. WO–08–086.
Bankruptcy No. 07–11679.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

March 9, 2009.

**2**

---

Submitted on the briefs: * Gabriel Rivera, Moore, OK, for Appellant.

L. Win Holbrook, Trustee, pro se, and Mark Monfort of Holbrook & Toffoli, Oklahoma City, OK, for Appellee.

Before BROWN, THURMAN, and KARLIN, Bankruptcy Judges.

## OPINION

KARLIN, Bankruptcy Judge.

Debtor, Jill Stephens ("Debtor"), appeals a bankruptcy court judgment finding

that Iowa's homestead exemption laws are inapplicable to property outside the State of Iowa. We reverse and remand for further proceedings consistent with this decision.

## I. BACKGROUND

Debtor and her former husband owned a home in Iowa for several years. In June 2005, in anticipation of their divorce, they sold the home and deposited the proceeds of the sale into a separate, segregated bank account in Iowa. In August 2005, Debtor permanently moved to Oklahoma and transferred her share of the sale proceeds, about $50,000, to a bank account in that state. Thereafter, Debtor used approximately $9,000 of those funds to cover moving expenses and to replace household goods. The remaining proceeds were left in the segregated account.

On May 21, 2007, almost two years after the sale of the house, Debtor filed a voluntary Chapter 7 petition in Oklahoma, and claimed the remaining sale proceeds exempt under Oklahoma law.[1] The Chapter 7 Trustee, L. Win Holbrook ("Trustee"), objected to Debtor's exemption claim. Prior to the hearing on Trustee's objection, the parties stipulated to the relevant facts and filed cross-motions for summary judgment, requesting that the bankruptcy court determine the applicable exemption law.

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from final judgments and

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. Debtor's "domicile" for the purposes of venue was Oklahoma, since she had resided there for more than 180 days prior to filing. Therefore, the filing of her petition in Oklahoma was appropriate. 28 U.S.C. § 1408(1).

orders of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[2] The bankruptcy court issued its ruling in a memorandum decision on October 7, 2008. Pursuant to that ruling, a judgment was entered on October 15, 2008, fully and finally resolving the exemption issue.[3] Debtor timely filed a notice of appeal from that judgment. Since neither party has requested the appeal be heard by the district court, this Court has appellate jurisdiction in this matter.

### III. ISSUES AND STANDARD OF REVIEW

■ The issue in this case is whether Iowa exemption law allows Debtor to claim as exempt certain proceeds received from the sale of her Iowa homestead, which property is now held in her new state of residence—Oklahoma. This is an issue of statutory interpretation, which is reviewed by this Court *de novo*.[4]

### IV. DISCUSSION

Section 522(b) of the Bankruptcy Code allows debtors to exempt either property specified in a list found in § 522(d) (the "federal exemptions") or "any property

that is exempt under Federal law, other than subsection (d) of this section, or State or local law," as well as jointly owned property that "is exempt from process under applicable nonbankruptcy law."[5] Debtors generally have a choice between electing the federal exemptions and those allowed under state law, unless applicable state law forbids it.[6] This is commonly referred to as the "opt-out" provision, and it allows states to require its debtors to only use exemptions available under state and nonbankruptcy federal law if those exemptions are available to the debtor.

Prior to the enactment of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), debtors were required to apply the exemption laws from the state that was their domicile for the 180 days immediately preceding the date of the filing of the petition or the state where they were domiciled for the greater portion of that 180–day period.[7] BAPCPA drastically changed the domicile requirements for determining which state's exemption laws are applicable to a debtor.[8]

Under BAPCPA, the test for determining which state's exemption laws apply depends on whether debtor has lived in the

---

2. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002.

3. A bankruptcy court's decision granting or denying a claimed exemption is a final order for purposes of appellate review. *In re Brayshaw*, 912 F.2d 1255, 1256 (10th Cir.1990).

4. *In re Lanning*, 545 F.3d 1269, 1274 (10th Cir.2008). Given the paucity of argument relevant to this issue contained in Debtor's brief, this Court considered affirming the bankruptcy court's judgment on the ground that inadequately briefed appellate arguments are forfeited. *Phillips v. Calhoun*, 956 F.2d 949, 953–54 (10th Cir.1992). However, because there exists stipulated facts, a clear statement and discussion of the issue by the bankruptcy court, and an appellee's brief directly on point (with no argument that the

appellant's brief is inadequate), we have opted to treat Debtor's appellate brief as "adequate" for the purposes of this appeal.

5. Section 522(b)(3).

6. Section 522(b)(2).

7. 11 U.S.C. § 522(b)(2)(A) (2004).

8. The "object of the amendment was to prevent persons from taking advantage of favorable state exemptions by moving [to a more favorable state] within two years before bankruptcy." Bankr.Exemption Manual § 4:5 (2008 ed.). *See also* David A. Samole & David L. Rosendorf, *Homestead Exemption No Longer "Debtors' Paradise,"* 24–10 Am. Bankr. Inst. J. 6 (December 2005/January 2006).

state where the bankruptcy petition is filed for at least 730 days immediately preceding the filing. If so, debtor's exemptions are evaluated under either the federal exemption laws or the exemption laws of the filing state, depending upon whether that state is an "opt-out" state.

If the debtor's domicile has not been in the filing jurisdiction for at least 730 days, the court is required to look back to the 180–day period immediately preceding the 730–day period. In that event, the debtor's domicile for exemption law purposes is the state where debtor lived the longest during that 180–day "look back" period. Again, once domicile is determined, either federal exemption laws will apply or, if the domiciliary state is an opt-out state, the court will apply the exemption laws of that state.

There is no dispute that although Debtor properly filed the case in Oklahoma, she did not live in Oklahoma for a full 730 days prior to the filing of her petition. Instead, her domicile was located in Iowa for the entire 180–day look back period. Therefore, the bankruptcy court correctly found that Iowa's exemption laws governed Debtor's bankruptcy case. Because Iowa is an opt-out state, if the pertinent Iowa exemption laws apply to Debtor, she can only claim the exemptions provided under Iowa law. She cannot elect the federal exemptions.[9]

Iowa's homestead statute provides that, "[t]he homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary."[10] Additionally, Iowa's homestead exemption extends to new homesteads that are purchased with proceeds from the sale of an exempt homestead.[11] Finally, pursuant to Iowa case law, proceeds from the sale of a homestead, which are intended to be reinvested in a new homestead, remain exempt "for a reasonable time."[12]

Had Debtor remained in Iowa with the intent to purchase a new residence there, her proceeds would be fully exempt if the court found it reasonable for her to have held them in the segregated account for the almost two year period between the house sale and the bankruptcy filing. However, Debtor did not remain in Iowa. Instead, she moved permanently to Oklahoma and took the proceeds from the sale of her homestead with her, purportedly with the intent to reinvest those proceeds in a new homestead in Oklahoma.

Because the proceeds from the sale of the homestead are no longer located in Iowa, the issue then becomes whether

9. Iowa Code § 627.10 (1998) provides that a "debtor to whom the law of this state applies on the date of filing of a petition in bankruptcy is not entitled to elect to exempt from property of the bankruptcy estate the property that is specified in 11 U.S.C. § 522(d) (1979). This section is enacted for the purpose set forth in 11 U.S.C. § 522(b)(1) (1979)." This Court does not here consider or decide whether a debtor would be entitled to the federal exemptions, even if her domicile is an opt-out state, in the event the exemption laws of the domicile state do not allow extraterritorial application.

10. Iowa Code § 561.16 (1992).

11. Iowa Code § 561.20 (1992) ("Where there has been a change in the limits of the homestead, or a new homestead has been acquired with the proceeds of the old, the new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or former one would have been").

12. *Millsap v. Faulkes,* 236 Iowa 848, 20 N.W.2d 40, 41 (1945) ("one who sells his homestead may for a reasonable time hold the proceeds exempt in order to reinvest in a new homestead to the extent in value of the old"); *Blakeslee v. Paul,* 212 Iowa 1385, 238 N.W. 447, 448 (1931) ("debtor has a reasonable time after the sale of his homestead to invest the proceeds in a new homestead").

Iowa's exemption laws are applicable to property located outside that state. In other words, do Iowa's exemption laws have "extraterritorial effect?"[13]

■ Before deciding whether Iowa's homestead statute is limited to real property located within the state, however, the Court takes note of the fact that one recently reported decision holds that the Bankruptcy Code preempts any state law that imposes limits on the extraterritorial effect of an exemption statute. In *In re Camp*,[14] the bankruptcy court held that Florida's express statutory prohibition against applying its exemption laws to property located outside the state was preempted by the choice of laws provisions found in § 522(b). Based on this ruling, a debtor who had moved from Florida to Texas was allowed to claim the Florida homestead exemption on the newly acquired property located in Texas, regardless of Florida law's express prohibition against doing so.

This Court declines to adopt the reasoning in *In re Camp*, and instead holds that the choice of laws provisions found in § 522(b) do not override, or preempt, state laws that prohibit the application of a state's exemption laws to property located outside the state. First, it is well-established that property rights in bankruptcy "are created and defined by state law."[15] As such, every bankruptcy case necessarily involves the bankruptcy court's consideration and application of state law. It appears to this Court that Congress was not seeking to exercise any preemption right by § 522(b)(3)(A), which expressly allows states to opt out of the federal exemption system and impose their own exemptions within the bankruptcy context.[16] In fact, it seems to have intended the opposite. "[R]ather than preempting the [exemption] area, Congress expressly authorizes the states to 'preempt' the *federal* legislation."[17]

■ A second reason we reject *In re Camp's* preemption approach is based on additional language inserted at the end of § 522(b)(3), which was simultaneously added to § 522 with the 730 day/180 day language contained within the same statutory subsection.[18] This "hanging paragraph" in

---

13. *See* William H. Brown, Lawrence R. Ahern, III & Donna T. Snow, *The Extraterritorial Effect of Homestead Exemption Statutes: An Emerging Issue*, Norton Bankr.L. Adviser at 2 (Jan.2006).

14. 396 B.R. 194 (Bankr.W.D.Tex.2008).

15. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (holding that "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding").

16. Admittedly, Congress's intent in allowing states to opt out of the federal exemption scheme is not entirely clear, since the provision was the result of a legislative compromise in connection with adoption of the 1978 Bankruptcy Code. *See* William Houston Brown, Lawrence R. Ahern, III & Nancy

Fraas MacLean, *History of Exemptions in Bankruptcy Law*, Bankr.Exemption Manual § 1:2 (2008 ed.).

17. *Rhodes v. Stewart*, 705 F.2d 159, 163 (6th Cir.1983).

18. Under the *In re Camp* analysis, we presume the only time this "hanging paragraph" would apply would be when a debtor had lived in a foreign country during the applicable 730/180 day time period. Given that the hanging paragraph was added simultaneously with the new choice of laws provision to prevent forum shopping, it is unlikely that the "foreign debtor" fact pattern was the problem Congress was primarily trying to remedy by allowing the debtor to use the federal exemptions contained in the "hanging paragraph." Instead, it is much more likely that the "hanging paragraph" was inserted to protect a debtor who would otherwise lose all exemp-

§ 522(b)(3) creates a safety net for debtors who are rendered "ineligible for any exemption" by subparagraph (A), by allowing them to claim the federal exemptions set forth in § 522(d). Under this provision, as the bankruptcy court correctly noted, if a debtor is unable to claim a state's homestead exemption because of territorial restrictions, she is not then deprived of claiming any exemption.[19] The preemption approach enunciated in *In re Camp*, which would always apply the exemptions of the applicable state, would essentially render the added language at the end of § 522(b)(3) meaningless. Our job, as interpreters of Congressional enactments, is to give meaning and effect to every part of a statute, if it is possible to do so, and we are loathe to interpret a statute in a way that would eliminate the need for one of its provisions.[20]

We instead adopt the procedure used in *In re Adams*[21] and *In re Jevne*.[22] If the plain language of the pertinent state's homestead statute[23] restricts its application to property located within the state, the statute cannot be given extraterritorial effect by the bankruptcy court, and the debtor will only be eligible for the federal exemptions under the savings clause contained in § 522(b)(3). If the plain language of a state's homestead statute is silent as to its extraterritorial effect, the Court must then look to that state's case law to see if the appellate courts of that state have interpreted their homestead statute to apply to property located outside of the state.

If no state case law exists on whether the exemption has extraterritorial application, the bankruptcy court must then interpret the state's homestead law according to its general principles governing exemptions, and more specifically homestead exemptions, in that state. Given the fact that most, if not all, state courts generally require homestead exemptions to be liberally construed in favor of debtors, it is very likely that a state's homestead exemption will be given extraterritorial effect absent a limitation placed on the exemp-

---

tions if a state's property laws were interpreted to deny the debtor the state's exemptions. That situation became much more likely to occur with the simultaneous adoption of the requirement that a debtor have lived in the filing state for at least two years and if not, that the debtor would be subject to the exemption laws of a state where he had not lived for over two years. *Cf. U.S. West Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1053 (9th Cir.2000) (holding that a court's obligation to construe harmoniously two sections that were enacted at the same time and form part of the same Act is "particularly acute," given the sections were enacted by the same legislative body at the same time).

19. *Cf. In re Adams*, 375 B.R. 532, 533 (Bankr. W.D.Mo.2007) (effectively rejecting *In re Camp* by holding that debtors were not entitled to use the Florida homestead exemption to exempt their Missouri home, even though Florida was deemed to be debtors' domiciliary under the new § 522(b)(3) choice of law

provisions, but would be entitled to use the § 522(d) federal exemptions because Florida's exemption laws were not extraterritorial).

20. *In re Sweeney*, 341 B.R. 35, 40 (10th Cir. BAP 2006), *aff'd*, 492 F.3d 1189 (10th Cir. 2007) ("we may not construe a statute in such a way as to nullify or make meaningless words and phrases").

21. 375 B.R. 532.

22. 387 B.R. 301, 304–06 (Bankr.S.D.Fla. 2008).

23. If the state has a constitutional provision governing homesteads, the constitution should be first consulted. *See In re Adams*, 375 B.R. at 533 (holding that bankruptcy courts must first consider any constitutional provision regarding homesteads, before applying homestead statutes). The Court was unable to locate any homestead provision in the Iowa constitution.

tion by either the statute itself, or a case interpreting that statute.

■ Here, the bankruptcy court found, based upon its review of Iowa law, that the Iowa homestead exemption has no extraterritorial effect and cannot be used to exempt property located outside the state. On this issue, we disagree with the bankruptcy court's conclusion.

The bankruptcy court held that "Iowa case law is clear that the homestead exemptions apply only to residents of Iowa." [24] The court did not base its decision on the language of the existing homestead statute, which contains no such restriction, but instead on three Iowa Supreme Court cases, decided between 1881 and 1917, interpreting the version of the homestead statute in existence when those cases were decided.[25]

We find the cited cases to be of limited use because each was decided based upon a different version of Iowa's homestead law than the one in existence when this Debtor filed her bankruptcy petition. In each of those cases, the Iowa homestead law expressly limited its application to residents of the state.[26] Iowa's current statutes—either its opt-out or its homestead statute—contain no such restriction.

■ In contrast, however, the current Iowa personal property exemption statute does contain a residency restriction. That exemption is expressly restricted to a "debtor who is a resident of this state." [27] One basic principle of statutory construction is that, where the legislature includes specific language in one provision and omits it another, it is presumed that it acted intentionally with respect to the omission.[28] Thus, the Iowa legislature's inclusion of a residency requirement in its personal property exemption statute, while making no reference to residency in its homestead statute, is presumed to be intentional.[29]

---

24. *Memorandum of Decision and Order Granting Trustee's Motion for Summary Judgment* at 4, *in* App. at 4.

25. *Leonard v. Ingram*, 58 Iowa 406, 10 N.W. 804 (1881); *Lyon v. Callopy*, 87 Iowa 567, 54 N.W. 476 (1893); *Dickson v. Cooper*, 181 Iowa 337, 164 N.W. 734 (1917). *See also Rogers v. Raisor*, 60 Iowa 355, 14 N.W. 317 (1882).

26. In addition to the fact that each decision interpreted a statute containing language with a residency requirement, which is omitted from the one we must interpret, we note that each of these cases is factually distinguishable, as well. For example, in *Leonard v. Ingram*, the issue was not whether Iowa's exemption laws were applicable to property outside of Iowa, as here, but at what point in time debtor could be said to have "abandoned" her Iowa residence such that it lost its status as a homestead. The *Lyon v. Callopy* case involved a debtor who lived and worked in Wisconsin but whose wages were garnished in Iowa. Debtor claimed that the Iowa courts should deem his wages exempt from garnishment under Wisconsin law, even though his Iowa wages were the subject of the garnishment, and Iowa law apparently did not exempt them. In *Dickson v. Cooper*, the issue was whether a mortgage, executed at a time when the mortgagors were nonresidents of the state of Iowa and could make no claim for exemptions in this state, became a valid lien upon the property. Though the Iowa court made the broad statement that "[t]he exemption laws of this state are to residents thereof only," its decision was based on its determination that a valid lien that attached to property in another state does not become invalid when the property is subsequently brought to Iowa. 164 N.W. at 735.

27. Iowa Code § 627.6(1998).

28. *See, e.g., In re Ballard*, 526 F.3d 634, 640 (10th Cir.2008) (citing *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)).

29. *In re Francisco*, 390 B.R. 700, 703 (10th Cir.BAP2008).

We conclude that the pertinent Iowa statutes in effect when this bankruptcy petition was filed do not plainly limit its homestead exemption either to residents of, or real property located within, the State of Iowa.[30] Moreover, the Iowa case law that discusses extraterritorial application of Iowa's exemption laws is distinguishable both factually and because it considered either a different version of the same statute, or a different statute altogether.

In applying the methodology described above, we conclude that Iowa's homestead exemption can be applied to real property (or here, proceeds) located outside the state. Because Iowa's homestead exemption law is "silent" as to its availability under these facts, and there appears to be no case law directly on point that addresses the current version of the homestead exemption,[31] the statute should be given extraterritorial effect. This holding is consistent with both the liberal construction afforded to Iowa's exemption laws, and the well-settled principle that "[t]he homestead right in Iowa is peculiarly favored." [32]

## V. CONCLUSION

We hold that the bankruptcy court erred in finding that Iowa's homestead exemption, as it is currently written, is not available to real property located outside the state. We therefore remand this matter to the bankruptcy court for a determination of whether or not the Iowa homestead exemption, which has been interpreted to apply only to sale proceeds that are held for a "reasonable" time, exempts the sale proceeds from the sale of Debtor's Iowa homestead. In other words, the bankruptcy court must determine whether holding those sale proceeds from June 2005 until the date of filing would be deemed "reasonable" under Iowa law.

We specifically do not address the bankruptcy court's conclusions that, in the event that Debtor is "ineligible" for the Iowa homestead exemption, (1) she is not entitled to the federal homestead exemption set forth in § 522(d)(1), but (2) that she is entitled to the federal "wild-card" exemption set forth in § 522(d)(5), as neither of those holdings was appealed by the parties.

---

**30.** *Accord, Guide to Exemption Options for Nonresident Debtors*, 3 Norton Bankr.L. & Prac.3d App. 56–B (2009), n. 68 (citing Iowa Code § 561.16 and *In re Williams*, 369 B.R. 470 (Bankr.W.D.Ark.2007) for the conclusion that Iowa's homestead exemption is not limited to residents).

**31.** This Court could not find, and was not cited to, any Iowa case law interpreting the current version of the homestead statute as imposing a residency requirement.

**32.** *In re Meyer*, 392 B.R. 416, 419 (Bankr. N.D.Iowa 2008) (citing *Gustafson v. Fogleman*, 551 N.W.2d 312, 314 (Iowa 1996)).