Elizabeth E. Brown, Bankruptcy Judge
THIS MATTER is before the Court on the Objection of David E. Lewis, chapter 7 trustee (the "Trustee") to the Debtors' Amended Claim of Exemption. To resolve this dispute, the Court must interpret the 2005 amendments to 11 U.S.C. § 522(b)[1] to determine whether the Debtors are able to claim a homestead exemption. Having considered the parties' briefs, the Court hereby FINDS AND CONCLUDES:
The Debtors filed this chapter 7 case on May 10, 2017. Shortly before filing, they moved from Colorado to Illinois. The venue restrictions set forth in 28 U.S.C. § 1408(1) require individual debtors to file bankruptcy in the place of residence where *699 they had lived for the greatest portion of the six-month period prior to filing. They had resided in Colorado from September 2011 through April 2017.[2] Thus, they were required to file in Colorado instead of their new home state.
Prepetition, the Debtors withdrew $28,900 from their IRA account to purchase a home in Decatur, Illinois (the "Property"). On the date of their bankruptcy, they lived in the Property and owned it free and clear of any liens or encumbrances. They initially claimed a homestead exemption for it under Colo. Rev. Stat. §§ 38-41-201(1)(a), 38-41-201.6 and 38-41-202, to which the Trustee timely objected. The Debtors then filed an amended claim of exemption, relying on both Colorado law and § 522(d)(1), to which the Trustee still objected.
I. THE PRIOR VERSION OF § 522(b)
When debtors move from one state to another shortly before filing bankruptcy, it affects not only where they must file the case, but it may also affect what exemptions they can claim. The Bankruptcy Code has a choice of law provision to govern this determination in § 522(b). Prior to 2005, § 522(b)(2)(A) contained the following domiciliary provision:
(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place ....
11 U.S.C. § 522(b)(2)(A) (2000) (amended 2005) (emphasis added). Thus, wherever the debtor lived for the greater portion of the six months prior to filing would be considered his domicile for purposes of claiming exemptions. This dovetailed nicely with the venue statute. In most cases, the state where the debtor had to file his case would also provide the applicable state law for claiming his exemptions.
However, the application of this domiciliary provision sometimes caused debtors to lose their exemptions. Many states have residency and property location restrictions on their exemptions. Some state exemption laws provide that they only apply to residents of the state. See, e.g. , Ind. Code § 34-55-10-2(c). Thus, if Indiana's exemption law applied under this formula and a debtor had moved his home and all of his possessions from Indiana to another state before filing, Indiana would deny him the use of any of its exemptions. A residency requirement coupled with a broadly worded opt-out statute could leave a debtor with no ability to substitute with bankruptcy exemptions. Such was the case in In re Hawkins , 15 B.R. 618 (Bankr. E.D. Va. 1981), where the court found the debtor could not claim Virginia exemptions because she was no longer a Virginia resident and Virginia had opted out of federal exemptions for all debtors. The court declined to strip the debtor of all exemptions, however, instead fashioning a de facto safety net by its conclusion that Virginia's residency requirement meant Virginia law was not "applicable to" the debtor under the prior version of § 522(b)(1) and, therefore, the debtor could choose the federal exemptions.
Colorado is one of many states that has a property location requirement. For *700 its personal property exemptions there is no such requirement, but there is in its homestead statute:
Every homestead in the state of Colorado shall be exempt from execution and attachment arising from any debt, contract, or civil obligation not exceeding in actual cash value in excess of any liens or encumbrances on the homesteaded property in existence at the time of any levy of execution thereon: (a) The sum of seventy-five thousand dollars if the homestead is occupied as a home by an owner thereof or an owner's family....
Colo. Rev. Stat. § 38-41-201(1) (emphasis added). This unambiguous language dictates that it only applies to real property located within the state of Colorado. See also In re Jevne , 387 B.R. 301, 303-04 (Bankr. S.D. Fla. 2008) (plain language of Colorado's homestead exemption explicitly limits application to property within the state); In re Kelsey , 477 B.R. 870, 874 (Bankr. M.D. Fla. 2012) (same). Thus, the Debtors in this case cannot use the Colorado statute to exempt their Illinois home.
II. SECTION 522(B) AND THE BAPCPA AMENDMENTS
With the adoption of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Congress made two significant changes to § 522(b). It lengthened the domiciliary requirement in subsection (3)(A) and it added a safety net in an unnumbered paragraph following subsection (3)(C).[3] For ease of reading, the Court has eliminated some language, highlighted other language, and added shorthand references for key provisions. In relevant part, it provides:
(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection ....
(2) Property listed in this paragraph is property that is specified under subsection (d) [the "bankruptcy exemptions "], unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize. [This last clause is referred to as the "Opt-out Clause "].
(3) Property listed in this paragraph is-
(A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition [the "non-bankruptcy exemptions "] to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition [the "Qualifying Period "] or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place [the "Tiebreaker Period " and this paragraph as a whole is referred to as the "Domiciliary Provision "];
(B) ...; and
(C) ....
*If the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, *701 the debtor may elect to exempt property that is specified under subsection (d). [This paragraph is referred to as the "Hanging Paragraph " or the "Safety Net "].
11 U.S.C. § 522(b) (2005) (emphasis added).
Under the prior version of this statute, the bankruptcy court looked to where the debtor had resided for the longest portion of the six months before filing. The amendment requires the court to look back two years pre-filing. If the debtor did not live in the same state for the entire two-year Qualifying Period, then the court has to look back even further to the six-month period immediately before the Qualifying Period. In this six-month window, or the Tiebreaker Period, the court must determine where the debtor lived for the longest portion. This formula is almost always going to make applicable the law of the state immediately preceding the debtor's move to his new state. However, in rare cases, a debtor might reside in more than two states in the two and one-half years prior to bankruptcy. For example, if a debtor lived in Kansas during the greater portion of the Tiebreaker Period, then moved to Colorado for most of the Qualifying Period, and finally moved to Illinois shortly before filing, then in this example, the formula would make Kansas law the governing law.
Under both the prior version and the amendments, this statute has always given debtors two choices for claiming exemptions. They may choose to exempt the property listed in § 522(d) (the "bankruptcy exemptions") or property designated as exempt under applicable local, state, and non-bankruptcy federal law (the "non-bankruptcy exemptions"). There is, however, one large exception. Section 522(b)(2) allows states to "opt-out" of the bankruptcy exemptions, thereby preventing their residents from claiming the bankruptcy exemptions. Thirty-two states have opted out. Colorado is among them. Colo. Rev. Stat. § 13-54-107.
III. INTERPRETING THE 2005 AMENDMENTS
In lengthening the domiciliary requirement for claiming non-bankruptcy exemptions, Congress sought to curb forum shopping before a bankruptcy filing. Some legislators believed that the prior law's 180-day period made it too easy for debtors to relocate to states with more generous exemption laws, especially those with more generous homestead exemptions. Texas, Florida, Kansas, Iowa, Arkansas, and Oklahoma have unlimited homestead exemptions, meaning that their debtors may exempt an unlimited amount of home equity. Tex. Property Code Ann. §§ 41.001(a) and 41.002, Fla. Const. art. X, § 4 (a)(1), Kan. Const. art. 15, § 9, Iowa Code § 561.16, Ark. Const. art. 9, §§ 3 - 5, Okla. Const. art. XII, § 2, Okla. Stat. tit. 31, § 2. By way of contrast, Colorado provides a homestead exemption of only $75,000 of equity or $105,000 if the debtor is elderly or disabled. Colo. Rev. Stat. § 38-41-201(1). By requiring debtors to live in a state for two years or more prior to claiming a state's exemptions, Congress endeavored to restrict the "mansion loophole." H.R. Rep. No. 109-31, pt. 1, at 15-16 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 102. Otherwise a Colorado debtor who was attempting to shield $1,000,000 in non-exempt assets could convert those assets to money and then purchase a mansion in Texas and move to Texas to claim its unlimited homestead exemption, thereby shielding the $1,000,000 from his creditors.
With the addition of a Safety Net in the Hanging Paragraph, Congress clearly signaled it did not want debtors to lose their exemptions due to the domiciliary *702 requirements in § 522(b)(3)(A). Under the former six-month requirement, some debtors had lost them and undoubtedly Congress anticipated that this would occur much more frequently with the new Domiciliary Provision's longer requirement.
In a sense, the Safety Net preempts a state's opt-out law. It does so when the combination of the Domiciliary Provision and state law restrictions deny a debtor any exemption to which he otherwise would have been entitled had he not moved out of state. Both amendments work together to disincentivize debtors from moving to obtain more generous exemptions, but not to leave them without any exemption. The debtor can "opt-in" to the bankruptcy exemptions whenever this combination causes him to lose any exemption.
While these amendments may appear to be straightforward, courts and commentators have recognized ambiguities when attempting to apply them. Despite the passage of BAPCPA more than a dozen years ago and the highly mobile society in which we live, there are relatively few published decisions interpreting these amendments. Those who have made the attempt cannot agree on its proper interpretation. No less than three interpretative camps exist.
A. The Differing Interpretations
Before describing the different interpretations, the Court wishes to acknowledge the very helpful summary of the state of the law and commentary presented by now retired Judge Eugene R. Wedoff in A Mobile Debtor Asks: Where Do I Find My Exemptions? , Bankruptcy Law Letter, Vol. 37, Issue 6 (June 2017) ("Wedoff "). This author divides the decisions and the commentary into: (1) the "Anti-extraterritoriality Interpretation"; (2) the "State-specific Interpretation"; and (3) the "Preemption Interpretation." Finally, he advocates for a hybrid between the Preemption and State-specific Interpretations, which this Court will refer to as the "Fourth Approach." This Court will now shamelessly plagiarize the author's good work.
1. The Anti-extraterritorial Interpretation
In general, this approach follows federalist principles. This means that, when federal law allows state law to determine an issue, then the court must interpret state law as the courts in that state would, regardless of the federal context in which it arises (i.e. its application in a bankruptcy case). But it further holds that a state's exemption scheme has no enforceability against property located in another state. In other words, one state's exemption laws have no extraterritorial effect on property located outside the state. "The rationale is that, in the non-bankruptcy context, exemption laws are part of 'a given state's mechanisms for the enforcement of judgments' and that one state 'cannot impose' its enforcement system on property located in another state." Wedoff at 4 (quoting In re Fernandez , 445 B.R. 790, 798 (Bankr. W.D. Tex. 2011) (" Fernandez I ") ). However, if the result of this interpretation causes a debtor to lose all his exemptions, then the Safety Net in the Hanging Paragraph would allow that debtor to claim federal exemptions.
2. The State-Specific Interpretation
On appeal, the district court reversed the bankruptcy court's ruling in Fernandez I . Fernandez v. Miller (In re Fernandez) , 2011 WL 3423373 (W.D. Tex. Aug. 5, 2011) (" Fernandez II "). It applied a "state-specific" construction. Under this approach, if the Bankruptcy Code's choice of law provisions determine that Colorado law applies, then the bankruptcy court must apply the Colorado exemptions in the same way that a Colorado state court would.
*703 3. The Preemption Interpretation
The third approach, championed by Professor Laura Bartell, advocates for removing both residency and location restrictions from state exemption laws before applying them. Laura B. Bartell, The Peripatetic Debtor: Choice of Law and Choice of Exemptions , 22 Emory Bankr. Dev. J. 401 (2006) ("Bartell "). The author argues that "Congress simply incorporated by reference property types and exemption amounts in the law of debtor's former domicile and made those provisions applicable to the debtor's current domicile." Wedoff at 7. In other words, the Bankruptcy Code preempts state law to the extent of state location and residency limitations.
4. The Fourth Approach
In his article, Judge Wedoff advocates for a preemption approach to the extent that § 522(b)(1) exempts the "property listed." This language, he posits, preempts any residency requirements within state exemption law because it is the property exempted by state law that matters, not the residency of a debtor. Residency is only relevant to determining the applicable state law. But it would not erase the state's location requirements. With this interpretation, he then argues that courts should follow the State-specific Interpretation, which would require the court to take into account any other restrictions, including location requirements.
With four possible, well-reasoned interpretations of this statute, clearly § 522(b) is susceptible to varying interpretations. "[A]mbiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses." Norman J. Singer & Shambie Singer, Statutes and Statutory Construction , § 45:2 at 17-18 (7th ed. 2014). Once a statute has been identified as ambiguous, the court must engage in an interpretative process to attempt to discern the legislature's intent. In doing so, "[c]ourts may consider the history of the subject matter involved, the end to be attained, the mischief to be remedied, and the purpose to be accomplished." Id. , § 45:5 at 39.
As previously mentioned, legislative history indicates that Congress was attempting to restrict the "mansion loophole" when it adopted the longer domiciliary requirements. That was the "mischief" it sought to remedy. With the Safety Net, Congress made it clear that it did not want the domiciliary restrictions to render the debtor "ineligible for any exemption."
In the Tenth Circuit, we have no binding precedent as to how to interpret this statute. The closest we come is dicta in Stephens v. Holbrook (In re Stephens) , 402 B.R. 1 (10th Cir. BAP 2009). In Stephens , the debtor moved from Iowa to Oklahoma less than two years prior to filing her chapter 7 bankruptcy. At the time she filed, she held the proceeds from the sale of her Iowa homestead in a segregated bank account in Oklahoma and she claimed these proceeds exempt under Iowa's homestead exemption. Iowa's opt-out statute applied not only to Iowa residents, but to all debtors to whom the Iowa exemption law applied under § 522(b)(3)(A). The court ultimately decided that Iowa's exemption of proceeds held from the sale of the homestead applied to property located in another state. However, it noted that the Safety Net protects debtors who are unable to claim a homestead exemption because of territorial limitations in state law. It stated that Congress intended the Safety Net to provide relief to debtors when the interrelationship between state law and the domiciliary requirements of the Bankruptcy Code would otherwise deprive them of their exemptions. 402 B.R. at 5-6.
*704 Without a binding precedent, this Court must attempt to discern which of these interpretations or some other approach is most persuasive. With the Anti-extraterritorial Interpretation, the Debtor's former state's law would never apply to property in another state and, therefore, the peripatetic debtor would always have to resort to the bankruptcy exemptions. Yet the clear intent of the Domiciliary Provision is to direct the application of the former state's exemption law, not to automatically substitute state exemptions with bankruptcy exemptions. If Congress had intended that mobile debtors should not claim any state exemptions, it would have stated that any debtor who had moved from one state to another within the relevant time frame would have to claim exemptions under § 522(d)(2), bypassing the former state's law altogether.
Moreover, this Court does not find any statutory support for an Anti-extraterritorial Interpretation in § 522(b) itself. If state law expressly states that both residents and non-residents may claim its exemptions, what in § 522(b) forbids this result? The court in Fernandez I may be right that one state's exemption laws have no extraterritorial effect on property in another state. See Sandberg v. McDonald , 248 U.S. 185, 195, 39 S.Ct. 84, 63 L.Ed. 200 (1918) ("Legislation is presumptively territorial and confined to limits over which the law-making power has jurisdiction."). This question of the extra-territorial reach of state law arises beyond the narrow arena of exemption law and implicates all state collection law. This Court has long wondered whether Colorado courts would recognize a "citation lien" in states like Illinois that purport to place an automatic blanket lien on all personal property interests of a debtor against whom the creditor has obtained a judgment, regardless of the property's location in another state. See, e.g. , 735 Ill. Comp. Stat. 5/2-1402(m)(1). Whether it involves exemption law in particular, or collection law in general, a fundamental choice of law question exists as to the extraterritorial effect of another state's law. But this Court does not see any language in § 522(b) that resolves this question or attempts to do so.
One commentator has suggested that the proper inquiry is not whether state law has extraterritorial effect but whether federal law, in § 522(b), has preempted the field of state law exemptions by giving them extraterritorial effect. Bartell at 415-16. The Preemption Interpretation advocates for viewing § 522(b) as a preemption of both the residency and location requirements in any state's exemption law. This would mean that it strips state law of these particular restrictions.
Certainly, Congress has the constitutional authority to preempt state law in such a fashion, but did it do so in § 522(b) to the extent the Preemption Interpretation claims? As the Fourth Approach suggests, it effectively did so to the extent of any residency requirement. If the former state has a residency requirement for claiming its exemptions, then application of that former state's law would deny the debtor any exemptions, triggering the Safety Net's option of claiming bankruptcy exemptions. This Court also agrees with both the Fourth Approach and the State-specific Interpretation that an opt-out state's law ought to be applied to the fullest extent possible, including whatever conditions, qualifications, or restrictions it imposes on a claim of exemption.
There is a significant difference between the State-Specific and Preemption Interpretations. As mentioned, Colorado only provides a homestead exemption for real property located within the state. Under the Preemption Interpretation, we would strip this Colorado statute to remove its *705 location requirement and the debtor would still receive Colorado's $75,000 homestead exemption. Under the State-specific Interpretation, we would give effect to all the conditions and limitations in state law. This would disqualify the debtor from receiving a $75,000 exemption. Instead, he would receive through the Safety Net, the bankruptcy homestead exemption of only $23,675.
B. The "Any Exemption" Ambiguity
What some of these interpretations acknowledge and others do not is that there is another ambiguity in this statute. The Safety Net provides: "[i]f the effect of the domiciliary requirement ... is to render the debtor ineligible for any exemption , the debtor may elect to exempt property that is specified under subsection (d)." 11 U.S.C. § 522(b)(3) *. There are two perfectly plausible interpretations of this two-word phrase.
The first is that the Safety Net only applies when the debtor has been denied all his exemptions. In other words, it is triggered only when it renders the debtor ineligible for "any exemption at all." This is the more restrictive reading. The more flexible interpretation is that it applies whenever the debtor is ineligible for "any exemption" or "any of his exemptions." It means the loss of any particular exemption will trigger the substitution of the counterpart bankruptcy exemption, if one exists.
The Anti-extraterritorial Interpretation never needs to reach this issue. It bypasses state law altogether because it holds that no state's law has extraterritorial reach and, therefore, the peripatetic debtor must always claim the bankruptcy exemptions. The Preemption Interpretation assumes without analysis that it applies only when the debtor has been denied all exemptions under state law. Bartell at 424.
Some of the courts applying the State-specific Interpretation have analyzed this issue and others have not. In In re Capelli , 518 B.R. 873 (Bankr. N.D. W. Va. 2014), the court discussed the issue and suggested that a debtor's eligibility for one state exemption would not preclude his use of the federal exemptions. 518 B.R. at 877, n.4. Similarly, in In re Kelsey , 477 B.R. at 878-79, the court ruled, without extensive analysis, that the debtors could use Colorado personal property exemptions and the federal homestead exemption. On the flip side, the courts in In re Katseanes , 2007 WL 2962637, *3 (Bankr. D. Idaho Oct. 9, 2007) and In re Capps , 438 B.R. 668, 673-74 (Bankr. D. Idaho 2010), interpreted the Safety Net restrictively, denying any federal exemption to a debtor who could claim some, but not all, state exemptions. Some courts, especially those upholding a debtor's right to claim a state exemption, do not mention the Safety Net at all. See, e.g. In re St. James , 560 B.R. 15 (Bankr. D. Mass. 2016). And some discuss the Safety Net, but do not decide this precise issue. See, Sheehan v. Ash , 889 F.3d 171, 174 n.4 (4th Cir. 2018) (expressly declining to reach the issue); Sheehan v. Ash , 574 B.R. 585, 589 n.2 (N.D. W. Va. 2017) (same); In re Townsend , 2012 WL 112995, *5-6 (Bankr. D. Kan. Jan. 12, 2012) (same). The court in Ku v. Brown (In re Ku ), 2017 WL 2705301, *3 (9th Cir. BAP June 21, 2017) (unpublished opinion) described the Safety Net in broad terms, saying that it applies if a debtor is ineligible for "any state exemptions," but the question this Court faces did not arise in the case. Finally, in an alternative holding in In re Long , 470 B.R. 186, 191 (Bankr. D. Kan. 2012), the court observed that the Safety Net would allow a debtor to claim federal exemptions if she could not claim state exemptions, but it did not have to decide what would happen if a debtor could claim one or more, but not all, state exemptions.
*706 C. This Court's Interpretation
This Court adopts the State-specific Interpretation as well as the flexible reading of "any exemption." These two interpretations best give effect to all the provisions of § 522(b) and the purpose behind the amendments. It does not immediately bypass state law, doing violence to the Domiciliary Provision, as the Anti-extraterritorial Interpretation does. It gives greater effect to the Opt-out Clause because it keeps state law intact to the fullest extent, unlike the Preemption Interpretation. And when the State-specific Interpretation is coupled with a flexible reading of "any exemption" it prevents the combination of state law and the Domiciliary Provision from denying a debtor any of the necessities that exemptions are intended to provide.
In In re Kelsey , the court reached this same conclusion. The debtors moved from Colorado to Florida less than two years prior to their bankruptcy case and claimed their Florida home exempt under Colorado's homestead exemption statute. The court ruled that Colorado's opt-out statute prohibited them from claiming the federal exemptions and Colorado's homestead statute did not apply to real property in Florida. 477 B.R. at 873-74. The court then said that "this scenario triggers the hanging paragraph of § 522(b)(3)... [which] is in effect a savings clause." Id. at 878. The court ruled that the debtors could claim the federal homestead exemption in § 522(d)(1) for their Florida home, even though both Colorado and Florida were opt-out states. Id. (citing In re Jevne , 387 B.R. 301, 305 n.2 (Bankr. S.D. Fla. 2008) and In re Fabert , 2008 WL 104104, *5 (Bankr. D. Kan. Jan. 9, 2008) ).
This approach also fosters the underlying policies at play. "[E]xemptions in bankruptcy cases are part and parcel of the fundamental bankruptcy concept of a 'fresh start.' " Schwab v. Reilly , 560 U.S. 770, 791, 130 S.Ct. 2652, 177 L.Ed.2d 234 (2010). Homestead exemptions, in particular, further the government's interest in protecting the debtor and the debtor's dependents by preserving their interest in their home. David Dorsey Distrib., Inc. v. Sanders (In re Sanders) , 39 F.3d 258, 260 (10th Cir. 1994). Given the importance exemption law places on the homestead, it is hard to imagine that Congress would have intended a restrictive reading of "any exemption," leaving many debtors with personal property exemptions, but no homestead exemption. Its aim was only to close the mansion loophole.
What this interpretation does not mean is that a debtor is assured of claiming every exemption that his new state would offer or all the exemptions in the Bankruptcy Code. The categories of property listed in paragraph (2)'s incorporation of the bankruptcy exemptions is unlikely to be identical to the categories of exempt property under paragraph (3) with the non-bankruptcy exemptions. For example, § 522(d)(5), known as the "wild card" exemption, exempts "any property" up to certain dollar limits. This is not an exemption available under Colorado's exemption law. If the Domiciliary Provision triggers the application of Colorado law, but Colorado does not have a wild card exemption, then the debtor has lost an exemption otherwise available under paragraph (2). Would the debtor in this example be allowed to claim the wild card exemption under § 522(d)(5) because applicable state law denies him this exemption? No.
Read as a whole, the statute allows a debtor to claim either bankruptcy exemptions under (2) or non-bankruptcy exemptions under (3). But if a state has opted out of the bankruptcy exemptions, then as a general rule the bankruptcy *707 exemptions are not an available choice for the debtor in that state. He is stuck with the state law exemptions. If applicable state law does not provide for an exemption for a certain kind of property, then it is not the Domiciliary Provision that has harmed him, but only state law. The Safety Net is not implicated merely because the debtor cannot claim exemptions for everything available under the Bankruptcy Code or under his new state's laws. It is only applicable when state law and the Domiciliary Provision combined have caused him to lose an otherwise available non-bankruptcy exemption.
IV. APPLICATION TO THIS CASE
Under the Court's interpretation, the Debtors in this case are eligible to claim the bankruptcy homestead exemption under § 522(d)(1). It provides that a debtor may exempt "[t]he debtor's aggregate interest, not to exceed $23,675 in value, in real property ... that the debtor or a dependent of the debtor uses as a residence." The Debtors valued their Illinois home at $28,900 and the Trustee has not disputed this valuation. If the Debtors were restricted to one homestead exemption, then their home would only be partially exempt. However, the interest of each Debtor in the homestead is exempt up to the dollar limit. Thus, joint filing debtors may "stack" two bankruptcy homestead exemptions. See In re Kelsey , 477 B.R. at 879 ; In re Morgan , 2009 WL 3617613, *1 n.2 (Bankr. D. N.M. Oct. 28, 2009) ; Black Brollier Building Materials v. Truan (In re Truan) , 121 B.R. 9, 10 (Bankr. S.D. Tex. 1990). This allows them to exempt a total of $47,350 in home equity. As a result, their new home is fully exempt.
V. CONCLUSION
For the foregoing reasons, the Court hereby OVERRULES the Trustee's objection and the Debtors' Illinois homestead is hereby EXEMPT.

All references to "§" or "section" shall refer to Title 11, United States Code, unless expressly stated otherwise.

Since the Debtors lived in Colorado for five and one-half months of the six-month period preceding their bankruptcy filing, the Debtors properly filed this case in Colorado. 28 U.S.C. § 1408(1).

The Court will cite this unnumbered paragraph as § 522(b)(3) *.