**In re Gregory Andy KRAMER and Merri Kristine Kramer, Debtors.**

**No. 05–43072 SBB.**

United States Bankruptcy Court, D. Colorado.

Feb. 21, 2006.

Glen R. Anstine, Denver, CO, Chapter 7 Trustee, Pro Se.

Keith Moskowitz, Boulder, CO, for Debtors.

## MEMORANDUM OPINION AND ORDER GRANTING TRUSTEE'S OBJECTION TO DEBTORS' CLAIM OF EXEMPT PROPERTY(DOCKET # 8)

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER came before the Court, on February 7, 2006, for a telephonic preliminary hearing regarding the Objection to Debtors' Claim of Exempt Property filed by Glen R. Anstine, Chapter 7 Trustee ("Trustee"), on December 14, 2005 (Docket # 8), and the Response thereto filed by Gregory Andy Kramer ("Mr. Kramer") and Merri Kristine Kramer (together "Debtors"), on January 11, 2006 (Docket # 11). The Court, reviewed heard the arguments of counsel, reviewed the pleadings, the Debtors' Schedules, and the Court's file in this matter, makes the following findings of fact, conclusions of law, and Order.

### I. *Background*

Mr. Kramer, was an employee with Advanced Energy Industries, Inc. (the "Company"). As part of his compensation package, he participated in an employee stock purchase plan whereby he purchased common stock in the company at a discount with the purchase price deducted directly from his paycheck. During his employment, he purchased 162 shares of common stock in the Company.

Debtors filed for relief under Chapter 7 of the Bankruptcy Code on October 12, 2005. The Debtors listed this stock in Schedules B and C and, in Schedule C, Debtors claimed that seventy-five percent (75%) of the value of the stock was exempt pursuant to Colo. Rev. Stat. §§ 13–54–104

and 5–5–105. Mr. Kramer testified at the Section 341 Meeting of Creditors that the shares were *not* paid to him in direct compensation of his labor services provided for the Company, but were purchased, through a payroll deduction, by Mr. Kramer at a discount that was provided to him as part of his employee benefit package with the Company.

## II. *Issue*

The sole question before the Court is whether the 162 shares of stock in the Company are exempt "earnings" pursuant to COLO. REV. STAT. §§ 13–54–104 and 5–5–105.[1] For the reasons stated below, the Court concludes that the 162 shares of stock purchased by Mr. Kramer are not exempt "earnings."

## III. *Discussion*

The Colorado Constitution mandates the enactment of liberal exemption laws.[2] Moreover, it has been long recognized that, with respect to state exemption laws enacted by the legislature, courts are to apply the law acknowledging that the exemptions laws are for the benefit of the residents of Colorado and are to be construed liberally.[3] The question presented to the Court compels this Court to discern just how liberally COLO.REV.STAT. § 13–54–104 can be construed. More particularly, to what extent, if any, "earnings," after disposition to stock, maintain their character so as to be exempt under Colorado law.

"Earnings" means:

(A) Compensation paid or payable for personal services, whether denominated as wages, salary, commission, or bonus;

(B) Funds held in or payable from any health, accident, or disability insurance.[4]

The Colorado legislature has placed restrictions on garnishments of "earnings" under COLO.REV.STAT. §§ 13–54–104 and 5–5–105. Under the facts of this case and Colorado law, no more than twenty-five percent (25%) of the aggregate disposable earnings of this Debtor could have been garnisheed at the time Debtor purchased stock in the Company.[5] Case law indicates that a debtor's wages do not necessarily lose character of "earnings" when placed in debtor's bank account, joint bank account with a spouse,[6] or upon disburse-

---

1. COLO.REV.STAT. § 5–5–105 provides:
   Prior to entry of judgment in an action against the consumer for debt arising from a consumer credit transaction, the creditor may not replevin goods, except motor vehicles, of the consumer with the use of force from a dwelling upon an ex parte order of court or attach unpaid earnings of the consumer by garnishment or like proceedings. The focus of this opinion is on COLO.REV.STAT. § 13–54–104 and the definition of "earnings."

2. *See* COLO. CONST. art. XVIII, § 1.

3. *See, In re Spykstra*, 86 B.R. 656, 659 (Bankr. D.Colo.1988); *Sandberg v. Borstadt*, 48 Colo. 96, 99, 109 P. 419, 421 (1910)

4. COLO.REV.STAT. § 13–54–104(1)(b)(I).

5. Specifically, COLO REV.STAT. § 13–54–104(2)(A)(I) provides:

For debts …, twenty-five percent of the individual's disposable earnings for that week or the amount by which the individual's disposable earnings for that week exceed thirty times the federal minimum hourly wage prescribed by section 206(a)(1) of title 29 of the United States Code in effect at the time the earnings are payable, whichever is less…

6. *In re Nye*, 210 B.R. 857, 859 (D.Colo.1997) (partial exemption for "earnings" not lost when the debtor deposited the earnings into a checking account, provided that the debtor could demonstrate that the sum deposited into the checking account represented his earnings); *In re Kobernusz*, 160 B.R. 844 (D.Colo.1993) (a judgment debtor's wages were held not to lose character of "earnings" simply when placed in a joint bank account with his spouse).

ment by an employer.[7] The Court is not aware of any case law in Colorado related to the placement of "earnings" into a Company's stock and whether the "earnings" remain as earnings or become personal property at that time.

Key to the published cases appears to be the ability to trace the "earnings" into the bank account or the debtor's wallet.[8] The "earnings" here *can* be traced to the stock. But the transaction, or transition, of the "earnings" into stock is rather different than the dollar for dollar transfer to a bank account or the debtor's wallet. The purchase of stock is not unlike purchasing a watch, stereo, or other personal property with one's earnings. Even though these transactions could be traceable to the earnings, it would seem that to permit an exemption on the purchase of personal property would lead to a slippery slope where potentially *everything* is exempt to seventy-five percent (75%). Here, there is sufficient change in the character, form, and substance of the earnings that they cross over the line and become personal property, not "earnings." If the legislature intended to exempt all, or seventy-five (75%) of all, personal property traceable to "earnings," it could surely create such exemption, but it has not.[9]

## IV. *Order*

IT IS THEREFORE ORDERED that the Trustee's Objection to Debtors' Claim of Exempt Property (Docket # 8) is SUSTAINED and the Debtor's claim of ex-

emption in the 162 shares of stock in the Company is disallowed.

---

**7.** *Rutter v. Shumway*, 16 Colo. 95, 98, 26 P. 321, 322 (Colo.1891) (the Colorado Supreme Court concluded that wages do not lose their identity when placed into a bank account).

**8.** *Nye*, 210 B.R. at 859; *Rutter v. Shumway*, 16 Colo. at 98, 26 P. at 322.

**9.** By way of example, the Colorado legislature does provide specific exemptions with respect to watches, household goods, qualified retirement funds, and other specified personal property. COLO.REV.STAT. § 13–54–102.