**In re Robert K. WELTON and Roberta O. Welton, Debtors.**

**No. 3:10–bk–1398–PMG.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 31, 2011.

Richard R. Thames, Robert A. Heekin, Jr., Stutsman Thames & Markey, P.A., Jacksonville, FL, for Debtors.

## ORDER ON AMERICAN SOUTHERN INSURANCE COMPANY'S OBJECTION TO EXEMPTIONS

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for a final evidentiary hearing to consider an Objection to the exemptions claimed by the Debtors, Robert K. Welton and Roberta O. Welton, in their Chapter 7 case. The exemptions were claimed pursuant to the Florida Constitution and § 222 of the Florida Statutes.

The Objection to the claimed exemptions was filed by American Southern Insurance Company (American), a creditor in this case.

American's Objection should be sustained. The Debtors' domicile was not located in Florida for the 730 days immediately preceding the filing of their Chapter 7 petition, or for the 180 days prior to such 730 days. Pursuant to § 522(b)(3)(A) of the Bankruptcy Code, therefore, Florida law is not the law that applies to the Debtors' claims of exemptions.

The disallowance of the claimed exemptions, however, is without prejudice to the Debtors' right to file an amended claim of exemptions under the state or local law

that is applicable pursuant to § 522(b)(3)(A) of the Bankruptcy Code.

## Background

The Debtor, Robert K. Welton, was engaged in the high-end stone business for approximately twenty-five years. He operated his business through various corporations or limited partnerships, including RKW International Inc. and RKW International Imports, Inc.

The address for the corporations was 7665 Ball Mill Road, Atlanta, Georgia (the Atlanta Property).

The Atlanta Property was the Debtors' home. The home was a five-bedroom, 6,000 square foot residence valued at approximately $1.3 million in 2006, and subsequently valued at approximately $700,000.00. (Tr. 60, 111, 113, 121).

The Debtors designed, built, and landscaped the Atlanta Property as their home. (Tr. 120). Construction of the Atlanta home was initially completed in 1985, and the home was renovated in 2004–2005. (Exhibit 13).

In 2005, the Debtors purchased a 3,000 square-foot condominium in Jacksonville Beach, Florida (the Jacksonville Property) at a pre-construction sale. (Tr. 60, 116). A certificate of occupancy was issued in September of 2007. (Tr. 116).

On August 19, 2009, American obtained a judgment in the amount of $719,655.22 against the Debtors and two of their corporations in the Superior Court of Fulton County, Georgia. (Exhibit 1).

On February 25, 2010, the Debtors filed a petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida.

The Debtors listed both the Atlanta Property and the Jacksonville Property on their schedule of real properly filed with the bankruptcy petition. The Jacksonville Property was listed as their homestead.

On their schedule of personal property filed with the petition, the Debtors listed household goods and furnishings valued at $5,550.00, jewelry valued at $2,150.00, and three vehicles with an aggregate value of $37,105.00.

On their Schedule C, the Debtors claimed the following property as exempt under Florida law:

| Property | Value of claimed exemption |
|---|---|
| 2000 Mercedes–Benz | $ 1,000.00 |
| 2004 Jaguar XJ8 | $ 1,000.00 |
| Homestead property (Jacksonville condominium) | $410,000.00 |
| Household goods | $ 2,000.00 |

All of the property was claimed as exempt pursuant to either the Florida Constitution or § 222 of the Florida Statutes.

On April 29, 2010, American filed an Objection to the Debtors' claim of exemptions. American objects to the claimed exemptions on three grounds: (1) the Debtors were not Florida residents on the date that they filed their bankruptcy petition; (2) the Debtors did not disclose all of their personal property on their bankruptcy schedules; and (3) the value of the Debtors' personal property exceeds the amount scheduled. (Docs. 25, 81; Tr. 51).

## Discussion

American's Objection to the Debtors' claimed exemptions should be sustained. The Debtors' domicile was not located in Florida for the 730 days immediately preceding the filing of their Chapter 7 petition, or for the 180 days that preceded such 730 days. Pursuant to § 522(b)(3)(A) of the Bankruptcy Code, therefore, Florida law is not the law that applies to the Debtors' claims of exemption.

The claimed exemptions are disallowed, however, without prejudice to the Debtors' right to file an amended claim of exemptions under the state or local law that is

applicable pursuant to § 522(b)(3)(A) of the Bankruptcy Code.

## A. Applicable state law

A debtor's claim of exemptions is governed by § 522 of the Bankruptcy Code. Generally, § 522(b)(1) provides that a debtor may exempt from property of the estate the property listed in either subparagraph (2) or, alternatively, subparagraph (3) of § 522(b).

Section 522(b)(2) provides that a debtor may elect the federal exemptions under § 522(d), "unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize."

Alternatively, § 522(b)(3)(A) provides that a debtor may exempt property that is exempt under the state or local law that is applicable in the place that is determined in accordance with the rules contained in that section. The choice of law rules provided by § 522(b)(3)(A) were significantly modified in 2005.

> Prior to the 2005 enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), a debtor's domicile for the 180–day prepetition period determined what exemptions were available to a debtor. . . .

> In an effort to thwart forum shopping by debtors who move to states with more generous exemption rights, Congress substantially amended 11 U.S.C. § 522(b)(3)(A) and provided a complicated choice of law provision that determines the exemptions that a debtor may claim. . . .

> As amended, § 522(b)(3)(A) lengthened the time that a debtor must be domiciled in a state in order for the debtor to avail himself of that state's property exemptions from 180 days to 730 days.

*In re Jevne,* 387 B.R. 301, 302–03 (Bankr. S.D.Fla.2008). "Through BAPCPA, Congress extended the period that a debtor must be domiciled in a particular state before that state's exemption statutes apply. (Citation omitted). As a result, debtors may no longer move to a new state, wait six months, and then take advantage of the new state's exemption laws. *Id.* Instead, debtors must be continuously domiciled in a state for at least two years prior to filing for bankruptcy before that state's exemption statutes are available." *In re Capps,* 438 B.R. 668, 672 n. 3 (Bankr.D.Idaho 2010).

The property that a debtor may exempt under § 522(b)(3)(A) as currently in effect is as follows:

**11 U.S.C. § 522. Exemptions**

> . . .

> (b)(3) Property listed in this paragraph is

> (A) subject to subsections (*o*) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition *at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single State for such 730–day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730–day period or for a longer portion of such 180–day period than in any other place.*

11 U.S.C. § 522(b)(3)(A) (Emphasis supplied). "Accordingly, under § 522(b)(3)(A), the 'test for determining which state's exemption laws apply depends on whether the debtor has lived in the state where the bankruptcy petition is filed for at least 730 days preceding the

filing.' " *In re Garrett*, 435 B.R. 434, 438 (Bankr.S.D.Tex.2010) (quoting *In re Stephens*, 402 B.R. 1, 4 (10th Cir. BAP 2009)).

The Debtors in this case filed their bankruptcy petition on February 25, 2010. Under § 522(b)(3)(A), therefore, the Court must determine whether the Debtors' domicile was continuously located in Florida for the two years immediately preceding February 25, 2010. If the Debtors' domicile was not continuously located in Florida between February 25, 2008, and February 25, 2010, Florida's exemption laws are not available in this case.

 "Where a debtor is domiciled is a matter of federal common law." *In re Dinan*, 2007 WL 533041, at *2 (Bankr. D.Mass.) (Citations omitted).

"Domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." (Footnote omitted). "One can reside in one place but be domiciled in another." (Footnote omitted). "A person can have but one domicile, which when once established, continues until he renounces it and takes up another." (Footnote omitted). A change in domicile requires the concurrence of two elements: (1) physical presence at the new location; and (2) an intention to remain there indefinitely, or the absence of any intention to go elsewhere. (Footnote omitted).

*In re Dufva*, 388 B.R. 911, 914 (Bankr. W.D.Mo.2008). A person establishes domicile "by being physically present in a location with an intent to remain there." *In re Capps*, 438 B.R. at 671.

### 1. 730 days

 In this case, the Court finds that the Debtors' domicile was not located in Florida for the two years immediately preceding the filing of their bankruptcy petition. Although they owned the Jack-sonville Property during these years, the evidence shows that they were not physically present in Florida for the 730–day period with an intent to remain in the state indefinitely. The Court reaches this conclusion for the following reasons:

**(a)** The Debtors owned the Atlanta Property, which they had designed and built as their residence, and consistently used the Atlanta Property as their address during the period from February of 2008 to February of 2010. Instances in which the Debtors used the Atlanta Property as their address include:

1. A Florida vehicle registration was issued on September 21, 2009, and reflects the Atlanta Property as Mrs. Welton's address because "that's where we received our mail at the time." (Exhibit 31, Tr. 76).

2. Mrs. Welton's IRA statements from October of 2009 through February of 2010 were mailed to the Atlanta Property. (Exhibit 31).

3. The Debtors' joint federal income tax returns for 2007 and 2008, dated April 8, 2008, and August 6, 2009, respectively, were prepared by an Atlanta tax firm and reflect the Atlanta Property as the Debtors' address. (Exhibit 31).

4. On January 28, 2010, the Georgia Department of Labor issued a statement of Unemployment Compensation benefits to Mr. Welton for the benefit year beginning on December 5, 2008, and ending on December 4, 2009, with an effective date of January 24, 2010. The statement was addressed to the Debtor at the Atlanta Property. The Debtor contends that he properly "operate[d] under the Georgia unemployment statutes" for the 2008–2009 period. (Exhibit 31; Tr. 79).

**(b)** The account statements of the Debtors' debit card activity reflect that they were present in Georgia and made substantially all of their family purchases in Georgia during the two years prior to February 25, 2010.

1. Mr. Welton's SunTrust account statements from February of 2009 through February of 2010, for example, primarily consist of transactions that occurred near the Debtors' Atlanta Property.

2. Mrs. Welton's Georgia Commerce and SunTrust account statements from February of 2008 through December of 2009 also consist primarily of transactions that occurred near the Atlanta Property.

The transactions shown on the statements include regular purchases at grocery stores, restaurants, dry cleaners, hair salons, pharmacies, and pet supply stores in the Atlanta area. (Exhibits 16D, 17B, 17D, and 21; Tr. 80–84,96).

**(c)** Mrs. Welton was employed in Georgia until three months prior to the filing of the bankruptcy petition. She testified, for example, that she was originally employed by Briggs Vision Group in Atlanta, Georgia in 2004, and that she continued her employment in Atlanta through the end of November in 2009. She and her employer would typically agree on a work schedule, and she would "spend time there" as needed. (Tr. 137).

**(d)** The Debtors identified the Atlanta Property as their residence on two separate financial statements prepared within the two-year period immediately prior to their bankruptcy petition.

1. A financial statement for the Debtors dated February 17, 2009, reflects the Atlanta Property as the Debtors' address in the caption of the document, and further describes the Atlanta Property as the Debtors' "residence."

2. A separate financial statement for Mr. Welton dated December 8, 2008, also shows the Atlanta Property as his address, and identifies the Atlanta Property as his "residence." (Exhibit 16C; Tr. 93–94).

Both of the financial statements list the Jacksonville Property as a townhome, but do not describe it as the Debtors' residence.

**(e)** Finally, the Debtors acknowledged at trial that they did not "live in the state of Florida the majority of each and every month over the last two and a half years." (Tr. 87).

In fact, the Debtors did not relocate certain household furnishings and other personal property from Georgia to Florida until three months after the filing of their bankruptcy petition. The personal property that was relocated postpetition included "master bedroom furniture," "guest bedroom furniture," linens, "living room furniture," "toiletry items," "kitchenware," clothes, tools, cleaning supplies, plants, and "pets." (Exhibit 16A; Tr. 67–71).

The evidence establishes that the Debtors were not physically present in Florida and did not live in the Jacksonville Property as their home for the two years preceding the filing of their bankruptcy petition. There is virtually no evidence in the record to show that the Debtors resided in the Jacksonville Property and used it as their permanent address. Under these circumstances, the Court finds that the Debtors' domicile was not located in Florida for the 730 days immediately preceding the filing of their bankruptcy petition.

### 2. Preceding 180 days

Additionally, § 522(b)(3)(A) provides that, if a debtor's domicile has not been located in a single state within the 730–day period immediately preceding the filing of the bankruptcy petition, the debtor's ex-

emption rights are determined according to the law of "the place in which the debtor's domicile was located for 180 days immediately preceding the 730–day period or for a longer portion of such 180–day period than in any other place." 11 U.S.C. § 522(b)(3)(A).

Essentially, the section "provides that if a debtor did not live in a state for 730 days immediately preceding the filing of the petition, the debtor's exemptions are governed by the state law where the debtor resided for the 180 days preceding the 730–day period." *In re George*, 2010 WL 5153031, at *1 (Bankr.E.D.Wis.). If a debtor changed domicile within the two years prior to the filing of the bankruptcy petition, "the Code looks to the six-months prior to the beginning of the two year period (between 730 and 910 days prior to filing) to determine which state's exemption laws apply." *In re Capps*, 438 B.R. at 672 n. 3.

In this case, the Debtors contend that they relocated from the Atlanta Property to the Jacksonville Property in the fall of 2008. According to Mr. Welton, it is "a fact" that the Debtors moved to Florida in the fall of 2008. (Tr. 78). At their § 341 meeting of creditors, both Debtors testified that they have been Florida residents since the fall of 2008. (Exhibit 14, pp. 17–18).

The fall of 2008 lies within the 730–day period immediately preceding the filing of the Debtors' bankruptcy petition. Even if the Debtors' own statement of their relocation date is accepted, therefore, the Debtors' change of domicile occurred within the two-year period prior to the bankruptcy petition. If a debtor moves within the two-year period, § 522(b)(3)(A) requires the Court to look to the 180 days immediately prior to the two-year period to determine which state's exemption laws apply.

The Debtors do not contend that their domicile was located in Florida during the six months that preceded the two years prior to their bankruptcy petition. They claim that they moved to Florida in the fall of 2008, and have not asserted that they resided anywhere other than the Atlanta Property prior to that time.

Under these circumstances, the Court finds that the Debtors' domicile was not located in Florida during the period between 730 days and 910 days preceding their bankruptcy petition. Pursuant to § 522(b)(3)(A), Florida's exemption laws are not available to the Debtors in this case.

## B. Amended Claim of Exemptions

On their initial schedules, the Debtors claimed certain exemptions pursuant to the Florida Constitution and § 222 of the Florida Statutes. The Court has determined that Florida's exemption laws are not applicable in this case under the choice of law provisions contained in § 522(b)(3)(A) of the Bankruptcy Code.

Rule 1009 of the Federal Rules of Bankruptcy Procedure, however, provides that a debtor may amend his schedules "as a matter of course at any time before the case is closed." F.R.Bankr.P. 1009(a). It is generally well-established under Rule 1009(a) that a debtor's right to amend his schedule of exemptions should be liberally permitted. *In re Howe*, 2009 WL 2914229, at *3 (Bankr.N.D.N.Y.) ("Case law supports a debtor's right to freely amend their exemptions."); *In re Barrows*, 408 B.R. 239, 243 (8th Cir. BAP 2009) ("Exemption claims are generally subject to liberal amendment.").

In this case, the Court finds that the Debtors should be permitted to amend their schedule of exemptions in order to claim the exemptions that are available under the State law that is applicable pur-

suant to the choice of law provisions contained in § 522(b)(3)(A) of the Bankruptcy Code. Assuming the Debtors' domicile was located in Georgia for the periods set forth in § 522(b)(3)(A), for example, the Debtors should be permitted to amend their schedules to claim the exemptions that are available under Georgia law. Georgia is an "opt-out" state, with the result that its residents may only claim the exemptions provided by Georgia law. *In re Vaughn*, 2008 WL 7880893, at *2 (Bankr.N.D.Ga.).

■ The Court recognizes, of course, that a debtor generally is not permitted to claim an asset as exempt if he has intentionally concealed the asset from his bankruptcy trustee and creditors. The Eleventh Circuit Court of Appeals, for example, has acknowledged that the "concealment of an asset will bar exemption of that asset." *In re Doan*, 672 F.2d 831, 833 (11th Cir.1982). Additionally, courts in multiple jurisdictions have "consistently held that intentional concealment of assets bars the debtor's exemption claim after the assets are uncovered." *In re Grogan*, 300 B.R. 804, 808 (Bankr.D.Utah 2003).

■ In this case, however, the Court cannot find that the Debtors intentionally concealed any property from the Chapter 7 Trustee. It is clear that the Debtors did not specifically identify certain items of personal property on their bankruptcy schedules. The Debtors' handguns, computer, and iPods, for example, were not separately listed on their schedule of assets. (Tr. 62–63). Additionally, the Debtors concede that they disclosed much of their personal property in the form of general lists with miscellaneous categories. (Tr. 118).

Apart from the initial failure to list specific items of personal property, however, the record does not show that the Debtors attempted to remove any of their assets from the reach of the Trustee, or to hinder the Trustee's investigation of the estate. The Atlanta Property and the Jacksonville Property were listed on the Debtors' schedules with values of $1,160,046.15 and $773,229.67, respectively. The Debtors appeared at their § 341 meeting on April 1, 2010, and subsequently testified at a 2004 examination by the Trustee on May 25, 2010. (Exhibits 14 and 15). The personal property of the Debtors was appraised and photographed at the Jacksonville Property on July 21, 2010. (Exhibit 19). On August 10, 2010, the Trustee filed a Notice of Intent to Sell the Debtors' household goods and furnishings, jewelry, and vehicles to the Debtors for the sum of $20,000.00. (Doc. 57).

American has filed a Complaint Objecting to the Debtors' Discharge. (Adv. No. 10–596). In Count I of the Complaint, American alleges that the Debtors have transferred or concealed property of the estate, including handguns, a mountain bike, patio furniture, office furniture, and electronic items. If American establishes that the Debtors concealed such property with the intent to hinder, delay, or defraud a creditor, their discharge may be denied pursuant to § 727(a)(2)(B) of the Bankruptcy Code.

Based on the current record, however, the Court cannot find that the Debtors intentionally concealed any particular asset of the estate. Consequently, the Debtors are not precluded from amending their schedules to claim the exemptions that are available to them under applicable law. See *In re Doan*, 672 F.2d at 833–34; *In re Estarellas*, 338 B.R. 538, 541–42 (Bankr. D.Conn.2006) ("In the absence of evidence that the debtor intended to fraudulently conceal assets, she may amend her Schedule C to claim an exemption."). If American objects to the amended claim of exemptions, such objection may be asserted within the time provided by Rule 4003(b)

of the Federal Rules of Bankruptcy Procedure.

### Conclusion

The Debtors have claimed exemptions pursuant to the Florida Constitution and § 222 of the Florida Statutes. American filed an Objection to the Debtors' Claim of Exemptions.

American's Objection should be sustained. The Debtors' domicile was not located in Florida for the 730 days immediately preceding the filing of their Chapter 7 petition, or for the 180 days prior to such 730 days. Pursuant to § 522(b)(3)(A) of the Bankruptcy Code, therefore, Florida law is not the law that applies to the Debtors' claims of exemption.

The disallowance of the claimed exemptions, however, is without prejudice to the Debtors' right to file an Amended Schedule C in order to claim the exemptions that are available to them under the State law that is applicable pursuant to the choice of law provisions contained in § 522(b)(3)(A) of the Bankruptcy Code.

Accordingly:

**IT IS ORDERED** that:

1. The Objection to Exemptions filed by American Southern Insurance Company is sustained, and the exemptions claimed by the Debtors, Robert K. Welton and Roberta O. Welton, are disallowed without prejudice.

2. The Debtors, Robert K. Welton and Roberta O. Welton, may file an amended schedule of exemptions within twenty-one (21) days of the date of this Order.