**In re Gene Harold KELSEY, and Regina Lee Sedar, Debtors.**

**No. 9:11–bk–17106–JPH.**

United States Bankruptcy Court, M.D. Florida, Fort Myers Divison.

Feb. 15, 2012.

Mark Martella, Port Charlotte, FL, for Debtors.

***ORDER SUSTAINING IN PART AND OVERRULING IN PART TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION*** (Doc. 13)

JEFFERY P. HOPKINS, Bankruptcy Judge.

*Introduction*

Because of the domiciliary requirements of § 522(b)(3)(A) of the Bankruptcy Code, Joint Debtors, Gene Harold Kelsey and Regina Lee Sedar, (hereinafter "the Debtors") have scheduled certain real and personal property as exempt under Colorado law. The chapter 7 trustee, Diane Jensen, (hereinafter "the Trustee") has objected to all of the Debtors' claimed exemptions on the basis that Colorado exemption law is not extraterritorial.

For the reasons that follow, the Court holds that Colorado's real property homestead exemption is not extraterritorial. As such, the Court will sustain the Trustee's objection with respect to the Debtors' real property which was claimed as exempt under Colorado's homestead exemption statute. However, the Court also holds

that Colorado's personal property exemptions are extraterritorial, and thus may be claimed by the Debtors in this case. Accordingly, the Court will overrule the Trustee's objection with respect to the Debtors' personal property which was claimed as exempt under various sections of Colorado's general personal property exemption statute.

### Procedural Posture

This matter came on for hearing before the Court on December 13, 2011 on the Trustee's Objection to the Debtors' Claim of Exemptions (the "Objection") (Doc. 13). The Court has also considered the Debtors' Response to the Objection (Doc. 20).

### Facts

The Debtors filed their joint bankruptcy petition on September 12, 2011. It is undisputed that the Debtors moved to Florida sometime in April of 2010, and have not resided in Florida for the requisite 730 days preceding the petition date so as to enable them to claim the Florida exemptions.[1] Nor is there any dispute that before moving to Florida, the Debtors lived for many years in Colorado. After moving to Florida, the Debtors purchased real property located in Port Charlotte, Florida (the "Real Property"). The Debtors have valued the Real Property at $69,500.00, and have claimed the Real Property as fully exempt on their Schedule C pursuant to Colorado's homestead exemption law. The Debtors have also claimed a variety of personal property ("Personal Property") as exempt pursuant to Colorado's personal property exemption statute. The Trustee filed her Objection to the all of the Debtors' claimed exemptions.

### Positions of the Parties

The Debtors argue that because they are unable to claim exemptions under Florida law by virtue of the domiciliary requirements of 11 U.S.C. § 522(b)(3)(A), and because both Florida and Colorado are "opt-out" states (meaning that the federal exemptions provided in § 522(d) are unavailable to residents of those states), the only exemptions that remain available to them are those of their former state of residence: Colorado. The Trustee objected to the Debtors' claimed exemptions under Colorado law on the basis that the Colorado exemptions are not extraterritorial (i.e., only residents of Colorado may claim the Colorado exemptions). Therefore, the Trustee argues that the Debtors, as residents of Florida, are prohibited from claiming any Colorado exemptions. The Court must determine whether either or both of the Colorado homestead and personal property exemptions can have extraterritorial effect, which, in turn, will determine whether the Debtors have properly claimed such exemptions under Colorado law.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (b), and the standing order of reference from the district court of the Middle District of Florida. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The Court may enter a final order resolving this matter under 28 U.S.C. § 157(b)(1).

### Legal Analysis

1. *Statutory Framework of § 522(b)*

As a threshold matter, the Court will discuss the framework of § 522 as it relates to the exemptions which are available to the Debtors. Section 522(b)(1) allows a debtor to exempt from property of the

---

**1.** It is undisputed that the Debtors moved to Florida from Colorado between 500 and 530 days prior to the petition date.

bankruptcy estate the property listed in either § 522(b)(2), or, alternatively, § 522(b)(3). The exemptions available under § 522(b)(2) are the federal bankruptcy exemptions listed in § 522(d). However, individual states may enact laws prohibiting debtors residing in those states from claiming the federal exemptions. When a state enacts such a law, it is considered to have "opted out" of the federal scheme of exemptions. Both Florida and Colorado are "opt-out" states. *See* Fla. Stat. § 222.20;[2] Colo.Rev.Stat. § 13–54–107. Accordingly, the Debtors could not claim the federal exemptions, and were forced into claiming exemptions within the rubric of § 522(b)(3).

Section 522(b)(3)(A) allows a debtor to exempt, subject to § 522(*o*) and (p), any property that is exempt under the state law that is applicable on the petition date at the place in which the debtor's domicile was located for the 730 days immediately preceding the petition date. If the debtor's domicile has not been located in a single state for such 730–day period (as is the case for the Debtors in this case), then the state law that is applicable is that of the place in which the debtor's domicile was located for 180 days immediately preceding the 730–day period. *See In re Welton*, 448 B.R. 76, 82 (Bankr.M.D.Fla.2011) (Glenn, J.) ("Essentially, the section 'provides that if a debtor did not live in a state for 730 days immediately preceding the filing of the petition, the debtor's exemptions are governed by the state law where the debtor resided for the 180 days preceding the 730–day period.' ") (internal citation omitted).

Application of § 522(b)(3)(A) to the facts in this case results in Colorado's law being the applicable law. The Debtors filed

their bankruptcy petition on September 12, 2011. During the 730 days immediately preceding the petition date (i.e., September 11, 2009 through September 11, 2011), the Debtors' domicile was located in both Colorado and Florida due to the Debtors' residential change from Colorado to Florida in April of 2010. Accordingly, the applicable state law is that of the state in which the Debtors' domicile was located for 180 days immediately preceding the September 11, 2009 through September 11, 2011 period. During that 180–day period (i.e., March 14, 2009 through September 10, 2009), the Debtors were domiciled exclusively in Colorado. Thus, under § 522(b)(3)(A), the Colorado exemption laws that were in effect on the petition date are the laws that must be analyzed to determine whether the Debtors have properly claimed their exemptions.

The court in *In re Jevne*, 387 B.R. 301 (Bankr.S.D.Fla.2008) (Hyman, C.J.) was tasked with the same undertaking this Court now faces: analyzing the exemption laws of another state to determine whether they have extraterritorial application. "[I]f a debtor has not been domiciled in one place for at least two years, the exemption law of the state where the debtor resides will not apply," thereby forcing courts to construe the disparate exemption laws of different states. *Jevne*, 387 B.R. at 303 (analyzing Rhode Island exemption law because the debtors moved from Rhode Island to Florida during the 730–day period preceding the petition date).

### 2. *The Colorado Homestead Exemption Does Not Apply Extraterritorially*

 As in this case, the *Jevne* court was required to resolve an objection

---

**2.** There is a single limited exception to Florida's opt-out status, which allows debtors to claim the federal exemption contained in § 522(d)(10). *See* Fla. Stat. § 222.201. Otherwise, the remaining federal exemptions provided in the other subsections of § 522(d) continue to be unavailable to Florida debtors by virtue of Fla. Stat. § 222.20.

lodged by the bankruptcy trustee to the debtors' claim of exemptions based on the argument that Rhode Island's homestead exemption was not extraterritorial, and, therefore, could not be claimed by the debtors, as Florida residents, in their bankruptcy case. In resolving the objection, the court established a two-part procedure to guide its analysis. Under this procedure, courts will first analyze the express language of the relevant state's exemption statute to determine whether the statute itself restricts its application to property located within the state. If so, then the statute cannot be given extraterritorial effect. *Id.* at 304. However, if the statute is silent as to its extraterritorial effect, then courts will review the relevant state's case law to determine whether the exemption can be applied extraterritorially. *Id.* If no precedent exists concerning the propriety of the statute's extraterritorial application, then courts ought to interpret the statute as applying extraterritorially "based upon the strong policy of liberally construing exemptions in favor of the debtor." *Id.* at 304–05.

The Court notes that the Tenth Circuit Bankruptcy Appellate Panel, which encompasses the state of Colorado, has adopted the procedure outlined in *Jevne* as the proper framework in which to analyze whether a state's exemptions are extraterritorial. *See In re Stephens,* 402 B.R. 1, 6 (10th Cir. BAP 2009) (expressly adopting the *Jevne* procedure). Based on the logical reasoning and sound analysis of the

*Jevne* court, this Court now joins the Stephens court in adopting the *Jevne* procedure, thereby adding to the growing number of courts to have done so.[3]

■ While the *Jevne* court's ruling rested on an analysis of the Rhode Island homestead exemption, that court also had occasion to construe Colorado's homestead exemption. The *Jevne* court noted that Colorado's homestead statute is one in which the plain language explicitly limits its application to property within the state. *Id.* at 303–04 (citing Colo.Rev.Stat. § 38–41–201) ("every homestead *in the state of Colorado* shall be exempt . . .") (emphasis added to the underlying statute). This Court agrees with that interpretation and thus concludes that the Colorado homestead exemption statute facially limits its application to real property located within Colorado. Accordingly, under the first step of the procedure outlined in *Jevne,* the Debtors in this case may not claim the Real Property as exempt under the Colorado homestead exemption because it is located in Florida. Accordingly, the Trustee's Objection will be sustained in part.

3. *The Colorado Personal Property Exemption Does Apply Extraterritorially*

■ With respect to the Personal Property, however, the Court finds that Colorado's exemptions do apply extraterritorially. Using the same two-part procedure from *Jevne,*[4] the Court notes that Colorado's

---

3. The overwhelming majority of bankruptcy and district courts, bankruptcy appellate panels, and circuit courts of appeal to have addressed the issue of extraterritorial application of state exemption laws have looked to the applicable state law under § 522(b)(3)(A) to determine whether that state's exemption law may be applied extraterritorially. *See In re Fernandez,* 2011 WL 3423373, *11, n. 3 (W.D.Tex. Aug. 05, 2011) (providing a comprehensive list of authority).

4. The Court acknowledges that *Jevne* established its two-part procedure for the purpose of analyzing a homestead exemption pertaining to real property. However, the Court finds that the same procedure can be applied with equal effect to cases involving personal property, and is not aware of any compelling reason why the procedure should not be extended or applied to encompass personal property as well.

personal property exemption statute does not, by its plain language, restrict the application or availability of the exemptions only to Colorado residents. *See* Colo.Rev. Stat. § 13–54–102 ("The following property is exempt from levy and sale under writ of attachment or writ of execution ...."). Unlike the Colorado homestead exemption statute—which begins with the phrase "every homestead in the state of Colorado shall be exempt"—and unlike the personal property exemption statutes of other states,[5] the Colorado personal property exemption statute contains no such words of geographical limitation. Moreover, to the extent that each subsection in Colorado Revised Statutes section 13–54–102(1) references the various types and categories of personal property as being owned by the "debtor," the term "debtor" is not defined in section 13–54–101 as being limited to residents of Colorado. *See* Colo.Rev.Stat. § 13–54–101(1) (defining "debtor" as "a person whose property or earnings are subject to attachment, execution, or garnishment").

If the Colorado legislature had desired to restrict its personal property exemptions to residents of Colorado, it could easily have done so in a variety of ways, including, for example, by defining "debtor" to include only residents of Colorado. Alternatively, the language of section 13–54–102 could have been drafted by the legislature to read as follows: "Colorado residents are entitled to exempt the following property from levy and sale...." But the statutes were not drafted in this manner. Absent any such language which expressly limits the personal property exemptions either to Colorado residents or to property located within Colorado, the Court finds that the personal

property exemption statute is silent as to its extraterritorial effect. This conclusion is buttressed by the fact that the Colorado legislature clearly knows how to provide for such a limitation, as evidenced by that state's homestead exemption statute, already discussed, but did not follow that same course when promulgating the personal property exemptions.

Having found that Colorado Revised Statutes section 13–54–102 does not speak to its extraterritorial effect, the Court will now review Colorado case law to determine whether the personal property exemption statute can be applied extraterritorially. The seminal case on this issue is *Sandberg v. Borstadt*, 48 Colo. 96, 109 P. 419 (1910). In *Sandberg*, the Colorado Supreme Court held that the defendant-sheriff was liable to the plaintiff-seamstress for three times the value of a sewing machine which the sheriff had levied upon under an erroneous writ of execution. The plaintiff based her cause of action on a Colorado statute which provided that "a sewing machine, when owned by any citizen of the state of Colorado, in addition to the property now exempt by law, shall be exempt from levy and sale under execution." *See Sandberg*, 48 Colo. at 98, 109 P. 419 (citing Section 3629, Rev. St. 1908 of the Colorado Statutes). The Colorado Supreme Court in *Sandberg* went on to state that "[p]rimarily, the exemption laws of the state are for the benefit of residents, and they are to be liberally construed." *Id.* at 99, 109 P. 419.

The Court pauses here to note that *Sandberg*—and specifically the excerpted language from the court's opinion stating that Colorado's personal property exemption is primarily for the benefit of its resi-

---

**5.** For example, the personal property exemption laws of Kansas are expressly limited to residents of that state. *See In re Fabert*, 2008 WL 104104, *2 (Bankr.D.Kan. Jan. 9, 2008)

("The Kansas personal property exemption statutes expressly provide that they apply to residents.") (citing Kan. Stat. §§ 60–2304, 60–2313).

dents—has led one bankruptcy court to conclude that Colorado's exemption statutes are not extraterritorial. *See In re Underwood,* 342 B.R. 358 (Bankr.N.D.Fla. 2006). As discussed in greater detail below, however, this Court disagrees with *Underwood.* This Court's reading of *Sandberg* does not compel a ruling that Colorado's personal property exemption statute is limited to only Colorado residents.

Returning to the *Sandberg* decision, this Court finds *Sandberg* inapposite to the question at hand. First, the sewing machine exemption statute cited in *Sandberg* expressly included the type of plain language that would facially restrict its application to residents of Colorado. As the *Sandberg* court noted, the statute provided that "a sewing machine, *when owned by any citizen of the state of Colorado ...,* shall be exempt from levy and sale under execution." (emphasis supplied). In other words, only sewing machine owners who were also citizens of the state of Colorado could claim that statutory exemption. By contrast, the current personal property exemption statute implicated in this case (Colorado Revised Statutes section 13–54–102) contains no such residency restrictions.

Furthermore, for a number of reasons, the Court does not find the Colorado Supreme Court's expression in *Sandberg* that "primarily, the exemption laws of the state are for the benefit of residents" is the type of unequivocal pronouncement that should preclude Colorado's personal property exemptions from having extraterritorial application. First, the *Sandberg* court's use of the word "primarily" clearly insinuates that there are other potential beneficiaries of the exemption laws in addition to Colorado residents. Second, it is axiomatic to conclude that every state enacts exemption laws *primarily* for the benefit of its own citizens. It does not necessarily follow, however, that those exemptions cannot also have extraterritorial effect. *See, e.g., In re Arrol,* 170 F.3d 934, 937 (9th Cir. 1999) (holding that California's homestead statute does not limit the exemption to instate dwellings, unlike the exemption statutes in other states); *In re Drenttel,* 403 F.3d 611, 615 (8th Cir.2005). ("The statute itself does not preclude use of the homestead exemption for an out-of-state property ... We therefore conclude that the Minnesota exemption can be applied to the [debtors'] Arizona homestead....") Absent an unequivocal indication to the contrary, this Court is not inclined to read such a broad statement—especially since *Sandberg* had nothing whatsoever to do with the potential extraterritorial application of its exemption laws—as a proscription on a non-resident's ability to claim the Colorado personal property exemptions under any circumstance. "Exemptions provided by statute for the purposes intended are, as they should be, favored. A perversion of the statute to admit of fraudulent purposes should be avoided by the courts; however, a construction so strict as to defeat its purpose and design should not prevail." *Penrose v. Stevens,* 100 Colo. 83, 87, 65 P.2d 697 (1937).

Third, the Colorado Supreme Court's statement in *Sandberg* cannot be read in isolation, but must be placed in its proper context. Indeed, the statute in *Sandberg* is not even the same statute upon which the Debtors in this case rely. *See In re Stephens,* 402 B.R. at 6–7 (noting the high likelihood that a state's exemption "will be given extraterritorial effect absent a limitation placed on the exemption by either the statute itself, or a case interpreting *that statute.*") (emphasis supplied); *see also In re Fernandez,* 2011 WL 3423373 at *27 (finding that in the absence of any state law authority limiting the reach of the specific exemption in question, "[t]he case for interpreting silence in favor of extraterritoriality is more convincing"). The Court is unwilling to find that a 1910

decision, *Sandberg*, which discussed an earlier and materially different version of the personal property exemption statute, and did not involve the extraterritorial issue, should be interpreted so narrowly as to supply the rule of law for this case.[6]

Returning to the instant dispute, the parties have not provided—nor has the Court located—any other Colorado state decisional law interpreting the personal property exemptions which proscribes the extraterritorial application of the Colorado personal property exemptions relied upon by the Debtors. The Court acknowledges the decisions of two bankruptcy courts, *In re Kramer*, 339 B.R. 761 (Bankr.D.Colo. 2006) and *In re Spykstra*, 86 B.R. 656 (Bankr.D.Colo.1988), in which the courts, in passing, noted that Colorado's exemptions are for the benefit of its residents. However, both cases cited *Sandberg* for that general proposition and did not contribute any additional legal analysis to that issue. And, as noted, this Court does not interpret *Sandberg* as holding that Colorado's personal property exemptions are not extraterritorial. Nowhere in *Kramer* or *Spykstra* did the courts hold that Colorado's exemptions are for the exclusive benefit of its residents. Indeed, neither case dealt with the extraterritorial issue. Accordingly, the Court finds *Kramer* and *Spykstra* unpersuasive on the issue now before this Court. Thus, absent any contrary Colorado statute or decisional law on this issue, the Court will, in reliance on the

*Jevne* procedure and rationale, interpret Colorado's personal property exemption statute as having extraterritorial application. *See Jevne*, 387 B.R. at 304–05 (ruling that an exemption should be interpreted to apply extraterritorially when there is no statutory or common law authority to the contrary).

The Court notes that the *Underwood* court reached the opposite conclusion. *Underwood*, of course, is not controlling on this Court's resolution of the Trustee's Objection. More importantly, though, the Court simply disagrees with the *Underwood* court's interpretation of Colorado law. In *Underwood*, the court appears to have relied in part on Colorado's "opt-out" statute as the basis for its holding that Colorado's exemptions were not extraterritorial. *See Underwood*, 342 B.R. at 361 (citing Colo.Rev.Stat. § 13–54–107) ("Exemptions authorized to be claimed by residents of this state shall be limited to those exemptions expressly provided by the statutes of this state."). However, this Court fails to see the connection between Colorado's "opt-out" statute and whether Colorado's exemptions are extraterritorial. The purpose of an "opt-out" statute is simply to render the federal exemptions unavailable; it has nothing to do with the state's own exemption statutes. Accordingly, the Court finds that the more appropriate statutes to analyze are the specific homestead and personal property exemption statutes, not the "opt-out" statute.[7]

**6.** The defendant in *Sandberg* argued on appeal that the plaintiff had failed to allege in her complaint that she was a citizen of Colorado, and that the trial court, therefore, should have excluded testimony as to the value of the sewing machine. *Sandberg*, 48 Colo. at 98–99, 109 P. 419. The court rejected this argument, finding that an averment of citizenship was unnecessary to confer either personal or subject matter jurisdiction on the trial court. When one recognizes that the *Sandberg* court's statement about residency was made in connection with the court's rejection

of the defendant's jurisdictional argument (which argument itself was raised solely because the statute in question, unlike the current statute, expressly limited its application to Colorado citizens), it becomes clear that the court did not intend to restrict the potential extraterritorial application of its general personal property exemption statutes.

**7.** The Court also acknowledges the decision in *In re Jewell*, 347 B.R. 120, 122 (Bankr. W.D.N.Y.2006), but disagrees with its conclusion. Also in apparent reliance on Colorado's

The Court also notes that the court in *Underwood* relied on the *Sandberg* decision and the bankruptcy court's opinion in *Kramer* as a basis for its holding that Colorado's exemptions were not extraterritorial. *See Underwood,* 342 B.R. at 361. As already discussed, this Court does not interpret those decisions in the same manner. Finally, the *Underwood* court appears to suggest that the Colorado Constitution restricts its exemptions to only Colorado residents. *See id.* ("[s]ince the Colorado exemption laws we're constitutionally mandated and enacted for the benefit of Colorado residents only, residents of other states are not allowed to avail themselves of the benefit granted by the Colorado legislature to its residents for their protection."). The Court notes that the Colorado Constitution, while it does provide for the passage of liberal exemption laws, does not place any restriction whatsoever on the potential extraterritorial application of such exemption laws. *See* Colo. Const. art. XVIII, § 1 ("The general assembly shall pass liberal homestead and exemptions laws.").

For the foregoing reasons, this Court disagrees with the ruling in *Underwood* that Colorado's exemptions are not extraterritorial. Instead, the Court finds that the Colorado personal property exemption statute is extraterritorial. Accordingly, the Trustee's Objection is overruled in part with respect to the Debtors' Personal Property.

### 4. *What Exemptions Apply to the Debtor's Real Property?*

■ Given the Court's ruling sustaining in part and overruling in part the Trustee's Objection, the Court is left to consider what exemption, if any, the Debtors may claim with respect to their Real Property. As noted above, because the Debtors have not been domiciled in Florida for the 730 days immediately preceding the petition date, they cannot rely on Florida exemptions. Moreover, because Colorado's real property homestead exemption is not extraterritorial, the Debtors, as Florida residents, cannot take advantage of it. This scenario triggers the hanging paragraph of § 522(b)(3), which states that "[i]f the effect of the domiciliary requirement under subparagraph (A) [of section 522(b)(3) ] is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d) [of section 522]."

This hanging paragraph is in effect a savings clause. Numerous courts have recognized the propriety of invoking the savings clause in circumstances such as these, notwithstanding that Florida and Colorado are otherwise "opt-out" states. *See, e.g., In re Jevne,* 387 B.R. at 305, n. 2 ("if the state law does not permit an exemption to be taken on property located outside the state, the debtor may still claim the federal exemptions even if the state of the debtor's domicile is an opt-out state that prohibits its residents from using the federal exemptions"); *In re Fabert,*

"opt-out" statute, the *Jewell* court wrote: "[i]n the event that, as is the case with Colorado law, the exemption law of the former residence requires that debtors actually reside within the State at the time of filing in order to claim the exemptions ... the debtors cannot claim the exemption of the State of their former residence." This Court is unaware of any Colorado law or exemption statute that requires debtors to "actually reside within the State at the time of filing in order to claim the

exemptions." Therefore, the Court disagrees with the holding in *Jewell.* To the extent that the "opt-out" statute is even relevant to the issue of extraterritorial application, which the Court does not believe it is, the Court does not interpret the Colorado "opt-out" statute as requiring actual residence in state as a condition of claiming Colorado exemptions. Rather, the "opt-out" statute simply states that debtors who do in fact reside in Colorado can claim only the Colorado exemptions.

2008 WL 104104, *5 (Bankr.D.Kan. Jan. 9, 2008) (invoking the savings clause where the debtor's prior state of residence was an opt-out state); *Id.* at *5, n. 30 (listing various courts that have permitted use of federal exemptions where debtors are otherwise left without any exemptions). Thus, pursuant to the hanging paragraph/savings clause of § 522(b)(3) and the corresponding resort to § 522(d)(1), the Debtors may each exempt $21,625.00 in value of the Real Property (as their residence), for a total exempt amount of $43,250.00. *See In re Morgan,* 2009 WL 3617613, *1, n. 2 (Bankr.D.N.M. Oct. 28, 2009) ("Joint debtors may 'stack' the exemption amounts provided under § 522(d), so that each debtor is entitled to claim an exemption in the amounts provided under those subjections"); *In re Truan,* 121 B.R. 9, 10 (Bankr.S.D.Tex.1990) (finding that the homestead exemption provided in § 522(d)(1) applies to each debtor in a joint proceeding, for a combined exemption of up to twice the amount provided under the exemption statute); *see also* 11 U.S.C. § 522(m). Given that the Debtors have valued their exempt interest in the Real Property at $69,500.00, and have not scheduled any secured creditors, the Trustee is entitled to $26,250.00 (i.e., the difference between the scheduled value and the combined exemption allotment) of value for the non-exempt portion of the Real Property.

### Conclusion

For the foregoing reasons, and as announced above, it is hereby ORDERED that the Trustee's Objection (Doc. 13) is SUSTAINED in part and OVERRULED in part.

**DONE AND ORDERED.**

